## Russell *v.* Sickles et al., Appellants.

Argued January 8, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY and DREW, JJ.

*Raymond A. White, Jr.,* of *Sloan, White & Sloan,* for appellant.—The agreement of November 1, 1923, was in accord and satisfaction of all claims between the parties: Barry v. Caplin, 73 Pa. Superior Ct. 487; Lovekin v. Fairbanks, 282 Pa. 100; Dillon's Est., 269 Pa. 234.

*Francis M. McAdams,* with him *Walter B. Gibbons,* for appellee.—The judgment was properly entered for plaintiff: Kirkpatrick v. Muirhead, 16 Pa. 117; Dutton's Est., 181 Pa. 426.

The motion for a new trial was properly dismissed: Rose v. Adelphia Hotel, 300 Pa. 1.

OPINION BY MR. JUSTICE DREW, March 24, 1932:

This suit was brought by L. George Russell for money alleged to be due him under an employment contract made on March 31, 1904, with the defendants, M. Sickles & Sons, a partnership engaged in the wholesale jewelry business, and for the unpaid purchase price of certain machinery sold by him to them. The verdict was for the plaintiff in the full amount of his claim.

The contract of March 31, 1904, was made by Russell and his brother, Robert C. Russell, and the defendants, and provided that the Russells were to be employed "as workmen and acting foremen of the manufacturing department of the said M. Sickles & Sons," at a stipulated salary, and as "additional compensation at the end of each year, 40% of the net profits realized out of and from the said manufacturing business." On February 15, 1912, an agreement was entered into between Robert C. Russell and Abraham Sickles, one of the members of the partnership, in which it was recited that "whereas under an agreement executed on the 31st day of March, 1904, the said Robert C. Russell and L. George Russell are entitled to 40% of the net profits realized out of and from the manufacturing business conducted for the benefit of M. Sickles & Sons," and that, for a consideration of $2,000, Russell assigns to Sickles "all accumulated and undistributed profits which have heretofore arisen under the agreement of March 31, 1904." On the same day Abraham Sickles assigned to the plaintiff, L. George Russell, for a good and valuable consideration, all the benefits and advantages obtained by him under said agreement with Robert C. Russell. The contract of 1904 contained a provision that either of the parties to it could terminate it at any time by one month's notice in writing. In 1923, the plaintiff gave such notice of his intention to terminate the contract. The parties then

entered into a new agreement, under seal, dated November 1, 1923, in which it was provided that all prior agreements between the parties should be cancelled and annulled, and that M. Sickles & Sons should maintain their manufacturing department and employ Russell as its manager until May 1, 1927. This agreement further provided, in paragraph five, that "the said M. Sickles & Sons agree to sell, transfer and set over......unto L. George Russell all their right, title and interest of, in and to the machinery, tools, equipment and fixtures of the manufacturing business carried on by them for the price or sum of nine thousand six hundred and thirty-seven dollars and ninety-seven cents, being the value thereof as determined by a certain inventory and appraisement made on the 30th day of April, 1923." No mention was made in this contract of the profits which accrued under the contract of 1904. Russell paid the contract price and the sale was executed.

In the years between 1904 and 1923, the manufacturing business of M. Sickles & Sons made profits amounting to $21,518.32; losses, however, were recorded in some of those years, so that the net profit in 1923, at the time of the making of the new agreement, was $11,-634.39. No profits were distributed to either party at any time. On the books separate accounts were carried for Russell and M. Sickles & Sons. To these accounts were credited profits earned in the proportion of 40% to Russell and 60% to Sickles & Sons, and, in the years the business was operated at a loss, a like proportion of the loss was charged against each account. This practice of charging losses against Russell was not authorized by the agreement of 1904, which provided solely that he should receive 40% of each year's profits; there was no mention of any liability by him for losses. At the trial, however, defendants contended that the written agreement of 1904 had by mutual consent been abandoned, and that in 1908 the parties had made an oral contract whereby Russell agreed to share losses incurred

as well as profits earned. Russell denied making any such change in the original agreement, and testified that defendants kept him in complete ignorance of the fact that the business had earned profits, and said that he did not learn this until some time after 1923, when it was called to his attention by an investigator of the income tax department of the United States. The court charged the jury that if they concluded that the written agreement of 1904 had not been abandoned and an oral agreement made as contended by defendants, they should find for the plaintiff; and this the jury did. Since there was no change in the agreement of 1904 the plaintiff was entitled to 40% of the profits and was not liable for any losses.

It was contended by defendants that the sale price of $9,637.97 in the agreement of 1923 was determined as follows, by deducting from an agreed total value of the assets of the manufacturing business the sum of $4,-610.34, the amount of profit over loss standing in plaintiff's account on the books of the company. The defendants claimed that on the execution of this agreement, plaintiff received payment in full of all profits due him under the agreement of 1904. A request to the trial court to charge the jury to this effect was refused. The action of the court in so doing, together with the refusal of defendants' motions for a new trial and for judgment n. o. v., and the entry of judgment on the verdict, were assigned as error.

Defendants make two contentions. They claim that the contract of 1923 was a full settlement of all claims of the plaintiff by way of accord and satisfaction, and that he therein received full payment of all profits which had accrued since 1904, and is not now entitled to maintain this action. The contract itself shows that this argument is unsound. It does not purport to be an accord and satisfaction; neither by direct statement nor by implication is there any suggestion that it was intended to constitute an adjustment of profits to which

plaintiff was then entitled, and it does not show in any way that those profits were considered in fixing the sale price of the equipment. On the contrary, the consideration for the things purchased is clearly and explicitly set forth as "the value thereof as determined by a certain inventory and appraisement made on the 30th day of April, 1923." The agreement itself makes it clear what plaintiff bought and what he agreed to pay. This contract was drawn by defendants' attorneys, and it is only reasonable to suppose that had plaintiff's profits been included in the sale price, there would have been a statement in the agreement to that effect. The language of Mr. Justice SIMPSON in Nick v. Craig, 301 Pa. 50, 56, fits the situation in the case at bar: "There is neither averment nor proof that anything was omitted from or added to the agreement by fraud, accident or mistake; hence, it must be construed exactly as it is written, and all prior negotiations as to its terms must be considered as merged in it." We have repeatedly announced it as our policy to uphold the integrity of written instruments, and to insist upon rigid adherence to the rule that where parties have deliberately and formally committed their engagements to writing, they cannot be permitted, by parol evidence, to vary or modify the written contract, unless it is averred and proved that by fraud, accident or mistake, the terms sought to be introduced were omitted from the writing: Gianni v. Russell, 281 Pa. 320; First Nat. Bank v. Sagerson, 283 Pa. 406; Speier v. Michelson, 303 Pa. 66; Hill & MacMillan v. Taylor, 304 Pa. 18. This contention of defendant is in direct contradiction of the written contract, and, there being neither averment nor proof that anything was omitted from it by fraud, accident or mistake, the contract must stand as written, which means that plaintiff's profits were not included in the sale price in the contract of 1923.

In addition, the verdict of the jury established the fact that plaintiff did not know when he made the con-

tract that there were profits due him on the books. He paid the price set, in ignorance of the existence of his claim for profits earned in the past. It is impossible to have an accord and satisfaction unless the party receiving payment understands that he takes it in full satisfaction of his claim (Dimmick v. Banning, Cooper & Co., 256 Pa. 295; Dillon's Est., 269 Pa. 234; Lovekin v. Fairbanks, Morse & Co., 282 Pa. 100) ; in other words, there must be a meeting of minds upon a state of facts known to both parties: Barry v. Caplin, 73 Pa. Superior Ct. 487.

Defendants' second contention is that the verdict of the jury was excessive because, even if plaintiff is entitled to profits without any deductions for losses, the sum of $4,610.34, the amount standing to plaintiff's credit on the books of the company at the termination of the agreement of 1904, having been included in the sale price, it should have been deducted from plaintiff's claim. This contention necessarily falls with the first one. We have already shown that no profits were included, nor was there any intention to do so, in the sale price fixed in the agreement of 1923, and since there is no claim that they were omitted by fraud, accident or mistake, the agreement must be construed "exactly as written."

The disputed questions of fact were for the jury, and they were submitted in a charge which was fair to both sides. The jury decided them in favor of plaintiff, and this really is defendants' sole cause of complaint.

The assignments of error are overruled, and the judgment of the lower court is affirmed at the costs of appellants.