Wolfe ,v. Pittsburgh, Appellant.

Argued March 31, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James G. Legnard,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellant.

*Paul J. McArdle,* with him *James P. McArdle* and *John Duggan, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 25, 1953:

On December 27, 1948, the plaintiff Harold Wolfe was injured when the automobile in which he was travelling westwardly on Duquesne Avenue came into collision with a patrol truck of the City of Pittsburgh travelling northwardly on Seventh Avenue. In the trial of the lawsuit resulting from this accident the plaintiff recovered a verdict of $5,000, and the defendant has appealed, urging judgment n.o.v.

The only difference between this case and the usual intersection vehicular crash is that here the defendant's vehicle, sometimes referred to as a "Black Maria," was transporting an injured person to a hospital. While functioning as an ambulance, a Black Maria (and this is true also of fire vehicles) is not held to the same limitations imposed on civilian cars and may thus ignore speed limits, signal lights and through stop signs, but these exemptions are conditioned upon the vehicle being operated "with due regard for safety" and they do not protect the driver "from the consequences of a reckless disregard of the safety of others," or "from the consequence of an arbitrary exercise of (the) right of way."[1]

Thus, in *Mansfield v. Philadelphia,* 352 Pa. 199, this Court declared: "While, as previously stated, a fire ve-

---

[1] A police ambulance when traveling in emergency is exempt from The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 5, 1937, P. L. 1718, regarding speed (section 1002 (f) 75 PS 501), traffic signals (section 1026 (d) 75 PS 635), entries upon through highways and stop intersections (section 1016 (d) 75 PS 591) ; and, when operated upon official business with audible signal, the exemption applies to the right of way rule (section 1014 (b) 75 PS 573).

hicle is not ordinarily limited as to speed and is permitted to run through a red light, certainly recklessness of operation cannot be denied if, in exercising those prerogatives, it fails to give due warning of its approach and if the operator pays no attention whatever to the traffic which is crossing an intersecting street; moreover, he cannot be heard to say that he did not see what must have been clearly visible to him had he looked."

The Superior Court laid down the same rule in *LaMarra v. Adam,* 164 Pa. Superior Ct. 268: "The fact that the police officer was engaged in the performance of his duties did not relieve him of the duty of care at intersections, nor absolve the city from liability for his negligence in the course of duty."

Even though transporting an injured person, the driver of an ambulance may not drive pell mell into heavy traffic, jeopardizing life and limb of pedestrians and other motorists. Humanity would not be served if, in the attempted saving of the life of one patient, several other innocent persons were killed—and the life of the original patient lost, in addition. Hence, the need from ambulances for spectacular and conspicuous warning to traffic, and the requirement for constant and sharp awareness on the part of the drivers.

The plaintiff and two other witnesses in this case testified that the driver of the Black Maria sounded no siren. The appellant City urges that this testimony is merely negative. But how else can a witness testify that he did not hear a siren, bell or whistle except that he say he did not hear it? Assuming, of course, he was in a position to hear the signal if it had actually been sounded. Testimony as to failure to hear a warning is not negative "when it comes from a witness who was in a position to hear, was paying especial atten-

tion, and for some particular reason was listening for just such a warning": *Williams v. Pittsburgh,* 349 Pa. 430.

The case of *Reilly v. Philadelphia,* 328 Pa. 563, relied on by the defendant, is distinguishable from the instant case in that there, as the court stated (1) "there was no valid testimony that audible warning of its approach to the intersection was not given:" and (2) "the accident occurred at an early hour of a Sunday morning when the streets in this suburban district were practically deserted, and under conditions warranting the reasonable assumption on the police driver's part that any other vehicle wishing to cross his course would surely hear and see the approach of the police car." It was also established in that case that the police car had the green light and furthermore, a disinterested plaintiff witness affirmed the sounding of the siren.

When the car in which the plaintiff was riding arrived close to the intersection of Duquesne Way and Seventh Avenue, it was confronted with a red light. When the light changed to green, two cars passed through the intersection and then the plaintiff's car was struck on the left rear side by the Black Maria which had passed into the intersection in defiance of a red signal light.

Although the defendant claims that the patrol car was on an emergency call, which entitled it to certain immunities from The Vehicle Code, the driver testified that he was driving only 10 miles per hour and that when he arrived at the intersection he slowed down to 3 to 5 miles per hour. It can scarcely be doubted that on this testimony alone the jury lost all faith in the credibility of the driver because it is legendary that police cars, and not without reason, invariably move along with appreciable celerity and dispatch. The fact that

even though the car was transporting an injured person, which would justify the traditional lightning speed associated with such an errand of mercy, the driver testified that he moved only at a tortoise gait. This statement must have lessened even more his credibility in the eyes of the jury.

If, in truth, the patrol car was snailing at from 3 to 5 miles per hour through the intersection, this fact would have constituted an additional reason for the driver not to have struck the plaintiff's car which was directly in his path and in full view.

The defendant's driver testified that he was sounding his siren continuously but it developed in the testimony that the siren was not automatic but was operated from a pedal under the driver's left foot, the same foot which the driver would have had to use on the clutch pedal if he was travelling at the slow speed indicated by him.

The evidence abundantly establishes reckless disregard of the safety of others on the part of the driver of the Black Maria. The jury could well find that he entered a busy downtown area without audible warning, that he proceeded through a red safety signal, and heedlessly drove into a highly active intersection with cars transversely moving before him and in his direct path.

The issue in this case was strictly one of fact. The jury, and in our opinion justly, gave greater credence to the plaintiff's witnesses than the defendant's witnesses. We see no reason for disturbing the verdict and the judgment is

Affirmed.