Dunmore, Appellant, v. McMillan.

Argued April 22, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*John A. Reilly,* with him *Edward D. McLaughlin,* for appellant.

*Edward H. P. Fronefield,* with him *Joseph T. Labrum, Jr.,* and *Lutz, Fronefield, Warner & Bryant,* for appellee.

OPINION BY MR. BENJAMIN R. JONES, June 30, 1959:

On February 16, 1957 at approximately 10:30 p.m. —the weather clear and the highways dry—a collision between several motor vehicles occurred at the intersection of 7th and Tilghman Streets, Chester, Pa. 7th Street intersects at right angle Tilghman Street, the former being a "through" highway and the latter a "stop" street. Dunmore, the appellant, was operating his 1957 Ford automobile in a southerly direction on Tilghman Street. As appellant approached 7th Street a stop sign was located approximately 17 feet from the intersection. Appellant stopped at or near the stop sign, looked to his left and right and, observing no approaching vehicles, proceeded into the intersection. While in the intersection appellant's automobile came into collision with appellee's 1956 Oldsmobile automobile which

474

was proceeding in a westerly direction on 7th Street. Subsequent to the collision appellant's automobile struck a car parked on the westerly side of Tilghman Street south of the intersection and appellee's car struck an automobile parked on the southerly side of 7th Street west of the intersection.

As a result of the accident appellant sustained serious injuries the damages for which he sought to recover in a trespass action instituted in the Court of Common Pleas of Delaware County. At trial, upon the conclusion of appellant's testimony as to liability, the court granted a compulsory nonsuit. From the refusal of the court below to remove the nonsuit this appeal was taken.

The sole question raised upon this appeal is whether or not the court below erred in its entry of a compulsory nonsuit. At the time of the entry of the nonsuit the court below held that appellant had failed to prove any negligent conduct on appellee's part. In its opinion justifying the entry of the nonsuit the court below further found that the evidence convicted appellant of contributory negligence as a matter of law.[1]

In passing upon the instant issue certain well-established principles of law must guide us: (1) the evidence, together with all reasonable inferences there-

---

[1] At oral argument our attention was directed to the fact that appellant had requested the right to call the appellee as of cross-examination but the court below refused to permit him to do so. The record indicates that this request was not made until *after* appellant had rested his case upon the question of liability, *after* oral argument as to liability before the court and *after* the court had ruled adversely to him on the motion for a nonsuit. While ordinarily such a matter is within the discretion of the trial court yet we need not consider this issue since it was not raised in the statement of questions involved on this appeal: Rule 35, Rules of the Supreme Court of Pennsylvania; *Kuhns v. Brugger*, 390 Pa. 331, 354, 135 A. 2d 395 and cases therein cited.

from, must be viewed in the light most favorable to appellant (*Gift v. Palmer*, 392 Pa. 628, 141 A. 2d 408; *Schofield v. King*, 388 Pa. 132, 130 A. 2d 93); (2) the mere happening of this accident does not constitute evidence of negligence and the burden was on appellant to prove by a fair preponderance of the evidence that appellee was negligent and that his negligence was the proximate cause of the accident (*Schofield v. King*, supra, 135; *Lanni v. Penna. R. R. Co.*, 371 Pa. 106, 88 A. 2d 887); (3) a compulsory nonsuit should be entered only in a clear case (*Schofield v. King*, supra, 135 and cases therein cited).

Appellant's evidence and the reasonable inferences therefrom, viewed in the most favorable light, indicate that he stopped his motor vehicle at the stop sign on Tilghman Street, looked "both ways", "looked east and looked west". Appellant further testified "I did not see nothing coming, no cars approaching, no lights. So I looked and I started to cross. When I got out in the street a piece, I kept looking going out in the street, going across. And when I got about the middle of the street, something hit me." Appellant was without further recollection of that which then happened. To appellant's left, in the direction from which appellee proceeded, he had an unobstructed view of 650 feet along 7th Street. One Susie Harper testified that she was walking on 7th Street when she saw appellant's "red and white Ford", that appellant stopped for the stop sign, that she saw him "look both ways" and, *before she had taken "two or three steps"* the collision occurred and "the noise of the collision was almost instantaneously after [she] . . . saw [appellant] stop and look in both directions." There was further testimony that appellee's automobile, which struck a parked vehicle on 7th Street, came to rest 71 feet west of the west curb line of Tilghman Street and that appellant's

car, which also struck another parked car on Tilghman Street, came to rest on the westerly side of Tilghman Street 50 feet south of the south curb line of 7th Street.

Our examination of this record fails to indicate any evidence whatsoever of negligent conduct on appellee's part. Although averred in appellant's complaint, the record completely lacks any evidence of excessive speed, failure to operate appellee's vehicle with due regard to the traffic conditions existing, operation of the vehicle in a reckless or wanton manner, failure to have the vehicle under proper or adequate control, lack of attention on appellee's part, failure to have properly lit headlights, or any other negligent conduct. Appellant's principal reliance is on the testimony: "I did not see nothing coming, no cars approaching, *no lights* . . ." (Emphasis supplied). From the latter it is argued that appellant was in a position to see and was paying special attention watching for automobiles approaching from his left and that the testimony that he saw "no lights" constituted positive testimony that appellee failed to have his headlights illuminated. Appellant further argues that the only reasonable conclusion is that appellee's lights were not lit and such conduct constituted negligence. The court below adequately and properly characterized this testimony: "We think this testimony is too vague, indefinite and fragmentary to support a finding that defendant was in fact operating his automobile without the headlights burning and was therefore guilty of negligence. The testimony is not only 'negative' in the full sense of that term; it is not even clear that it refers to vehicular lights at all. While the vexed question of 'negative' testimony as opposed to 'positive' or 'affirmative' testimony has been greatly clarified by our Supreme Court in Costack v. Pennsylvania Railroad Company, 376 Pa. 341, we do not understand that a plaintiff can establish defendant's negli-

gence on any such meagre and equivocal testimony as that contained in the present record".

The distance (71 feet) which appellee's car travelled after the collision is not indicative of negligence on appellee's part any more than the distance (50 feet) travelled by appellant's car after the accident. The record lacks *any* evidence indicating negligent conduct on appellee's part and the court below was thoroughly justified in refusing to submit the question of appellee's negligence to the jury. To have submitted such an issue would have permitted the jury to guess and speculate rather than to rely on proof of that which actually occurred. All appellant proved was the happening of an accident; absent further proof, he was not entitled to have his case submitted to a jury.

*Costack, Administratrix v. Pennsylvania Railroad Company,* 376 Pa. 341, 102 A. 2d 127, *Wolfe v. Pittsburgh,* 373 Pa. 626, 96 A. 2d 907, *Kindt v. Reading,* 352 Pa. 419, 43 A. 2d 145, *Williams v. Pittsburgh,* 349 Pa. 430, 37 A. 2d 540, *Healy v. Shedaker,* 264 Pa. 512, 107 A. 842, *Dandridge v. Exhibitors Service Co.,* 167 Pa. Superior Ct. 143, 74 A. 2d 670, *Craig v. Gottlieb et ux.,* 161 Pa. Superior Ct. 526, 55 A. 2d 573, *Murray v. Lavine,* 92 Pa. Superior Ct. 372 and *Perry v. Butler,* 142 Me. 154, 48 A. 2d 631, relied upon by appellant, are clearly inapposite.

In view of our conclusion that the court below properly entered this nonsuit because of lack of any evidence of negligence by appellee, it is unnecessary to consider whether or not appellant was guilty of contributory negligence as a matter of law.

Judgment affirmed. Costs on appellant.

----

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On the night of February 16, 1957 (10:45 p.m.), the plaintiff Geve Dunmore, 42 years of age, was operating

his Ford automobile in a southwardly direction on Tilghman Street in the City of Chester. When he came to the point where Tilghman Street is intersected by Seventh Street (a through highway), he stopped at the Stop sign, looked to the right and left to be assured that traffic was clear, and, then being so assured, he entered into the intersection. When halfway through he was struck by an automobile coming from his left on Seventh Street and driven by the defendant, Charles McMillan, thereby sustaining serious injuries. In the ensuing lawsuit which he brought against McMillan he was nonsuited on the averred basis that he did not prove that McMillan was negligent. This appeal followed.

In relating from the witness stand how the accident occurred, the plaintiff explained that he stopped at the Stop sign and then: "I did not see nothing coming, no cars approaching, no lights. So I looked and I started to cross. When I got out in the street a piece, I kept looking going out in the street, going across. And when I got about the middle of the street, something hit me." He could not tell what happened after the collision because he was knocked out of his car to the street, rendered unconscious and taken to a hospital.

A disinterested witness, Susie Harper, who was walking along the street at the time of the accident, testified that she saw the plaintiff stop at the Stop sign, that she saw him "look both ways" and that after she had taken two or three steps, she heard the crash of the cars.

The Majority Opinion says that in considering this case on appeal, "the evidence, together with all reasonable inferences, must be viewed in the light most favorable to the appellant." Then, applying that rule to the record in the case, it comes to the conclusion that the appellant-plaintiff did not make out a case of negli-

gence against the defendant McMillan. Even without inferences the testimony of the plaintiff showed McMillan to have been negligent. McMillan was driving at night without lights, this in direct violation of The Vehicle Code provisions. In addition, he drove his car into an automobile which was directly in his path. And then, even though he was on a through highway, he still was required to observe the rules of the road with regard to cars committed to an intersection before his arrival at the intersection. In addition, he operated his car at such a rate of speed that after hitting the plaintiff's car broadside he still had enough momentum to travel some 70 feet, climbing the curb and hitting a parked car with such force as to propel it 6 or 7 feet into the street.

Upon such an uncontradicted narrative of events, I believe it was a flagrant abuse of discretion on the part of the Trial Judge not to submit the case to the jury on the question of the defendant's negligence. In seeking to justify his nonsuit the Trial Judge said: "Plaintiff's principal contention seems to be that the evidence showed that defendant's headlights were not burning, and thereby established negligence. This contention is based entirely on a casual, almost chance, remark made by the plaintiff on direct examination: 'I did not see nothing coming, no cars approaching, no lights.' In the course of his cross-examination, plaintiff stated that his eyes were 'good', that he 'never had any trouble' with his eyes.

"We think this testimony is too vague, indefinite and fragmentary to support a finding that defendant was in fact operating his automobile without the headlights burning, and was therefore guilty of negligence."

Why does the Court characterize the plaintiff's testimony as casual? The plaintiff was testifying to a very grave event in his life, one that will affect him

for the rest of his days. He suffered a severe cerebral contusion, fractures of the skull, permanent loss of the use of his right hand and arm, and for a period of time lost the function of memory. His testimony was by no means casual. The Trial Court said further that Dunmore's testimony was "vague, indefinite and fragmentary". Would the Court have been more satisfied if the plaintiff had spoken in perfect English and had emphasized and embroidered the simple story of his disaster? If the plaintiff had been an educated man, he might have said: "Being thoroughly aware of my responsibilities as a careful driver, I stopped at the Stop sign a sufficient length of time for me to appraise the entire traffic situation. I looked to the right and I looked to the left to make certain that nothing was moving in the intersecting streets which might imperil my passage through the intersection. There were no cars within my view, and I do have excellent vision. However, since it was nighttime I made it a point to look searchingly for headlights of cars because I knew that if there was a car anywhere close, I would be sure to see its lights. However, I saw no lights, and I thus assured myself that there were no cars approaching the intersection, and I thus passed into the intersection."

Would such a tautological explanation have said more than the uneducated Dunmore said when he uttered his simple, but highly informing statement: "I did not see nothing coming, no cars approaching, no lights." Was it not for the jury to decide upon that testimony whether the defendant was driving at night without lighted headlamps and, therefore, negligent? Was it not for the jury to say whether the defendant was travelling at a high rate of speed if, even assuming he had lights, he sped into the intersection from a far away invisible point during the seconds which elapsed between the moment the plaintiff stopped and

looked and the moment that he was hit by the defendant?

In addition to characterizing the plaintiff's testimony as vague and fragmentary, the Trial Court called it negative. What is negative testimony? As that term is used by the Trial Court, it is a snare, a delusion, and a fraud. In reality there is no such thing as negative testimony. Let us suppose a situation where in fact there were no cars on a certain street at night and a university president was asked if he had seen any cars. Let us suppose he replied to that question: "I saw no lights." Could there be any doubt that he meant by that reply that there were no cars moving? And what more direct and clearer way would there be to state that there were no lights than to say: "No lights"? And why would such a statement if made from the witness stand be called "negative testimony"?

Negative suggests inferior. Does such a statement become inferior because it is short? Julius Caesar said: "I came, I saw, I conquered." Could he have said more if he had talked for an hour? Perry said: "We have met the enemy and they are ours." Could he have said more if he had written a report of 100 pages? Wellington said: "Bluecher or night." Would Wellington's victory at Waterloo have been more glorious if he had voiced his supplication in thousands of words?

And so, the unhistorical and uneducated Geve Dunmore, but a man entitled to everything that the law allows in justice, when asked what he saw, replied that he saw "nothing coming, no cars approaching, no lights." Was it necessary for him to say more? Could he have said more?

When the defendant's car struck him, he was catapulted out of his car into the street with such violence that he was unconscious for 16 days. He was still a disabled man when he testified. He was a man of few

words. How did the accident happen? Why didn't he avoid the disaster which overtook him? He did all that a careful man could do. He stopped and looked east and looked west, saw the intersection, but he saw no cars, he peered into the darkness and he saw no lights. What more should he have done? The Majority Opinion does not say.

The Majority Opinion is content to quote the Trial Court which says that Dunmore's evidence was vague and fragmentary. Even with his impaired memory, as Dunmore now goes through life as best he can, he cannot help but feel that his experience in the temple of justice somehow was rather vague and fragmentary.