Kready, Appellant, *v.* Bechtel, Lutz & Jost.

570

Argued January 11, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Paul N. Schaeffer,* for appellant.

*David H. Roland,* with him *George B. Balmer,* and *Snyder, Balmer & Kershner,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 17, 1963:

Appellant, who was employed as a salesman by appellee, purchased, on January 2, 1942, three shares of the stock of appellee. On April 11, 1942, the parties entered into a written agreement which obligates appellee to purchase appellant's shares "upon the death of Kready, or upon his leaving their employ", "at the book value of said stock as appears on a balance sheet of [defendant] as of the 31st of December preceding

the death or leaving of their employ", and bound appellant to transfer the shares to appellee upon payment.

Appellee caused a notice to be typed on the stock certificate representing these three shares, to the effect that the certificate was held subject to the terms of the agreement of April 11, 1942. On July 1, 1943, January 3, 1944 and January 2, 1945, appellant purchased five, two and two additional shares, respectively, of appellee's stock. On each of these stock certificates, the same notice of subjectivity to the April 11, 1942 agreement was noted. Some time between January of 1946 and 1950, the testimony on the point being extremely vague, appellant surrendered his stock certificates to appellee. The certificates were returned to him with the word "Void" written across the notice of subjectivity to the April 11, 1942 agreement and with the following notation on them: "This certificate is held subject to the right of Bechtel, Lutz & Jost, Inc. to purchase the shares represented by this certificate upon the death of the registered owner hereof, or upon the registered owner hereof ceasing to be in the employ of Bechtel, Lutz & Jost, Inc. The price shall be the book value of said shares. Agreed to. J. Miller Kready." On January 2, 1946, appellant purchased three additional shares of appellee's stock and when he received the certificate it contained the notice last above quoted. This purchase brought appellant's total stock ownership to fifteen shares.

Appellant ended his employment relationship with appellee on January 30, 1959, at which time the value of appellee's capital stock was $1,244.35 per share. Appellant offered to surrender his shares for the aforesaid price, but appellee refused to purchase them, whereupon appellant commenced, by complaint, an action of assumpsit, alleging a breach of the agreement of April 11, 1942. Appellee filed an answer and new matter, setting up as a defense to the action the abroga-

tion of the April 11, 1942 agreement and relying upon the second notation on the certificate, this second notation being an option to purchase rather than an unconditional obligation to do so. Appellant replied to the new matter, alleging that the second notation was made without his consent or authorization, as was the placing of the word "Void" on the first notation, and neither the alleged cancellation of the first notation nor the second notation's existence affected appellee's obligation to purchase. Appellant further averred that there was no consideration for any agreement between the parties to nullify the agreement of April 11, 1942.

The matter came on for jury trial and, at the close of appellant's case, the trial court, on appellee's motion, entered a judgment of compulsory nonsuit. Appellant's motion to take off the nonsuit was refused by the court en banc, one member thereof dissenting, and this appeal followed.

The court below held that appellant had consented to the nullification of the April 11, 1942 agreement and the substitution therefore of the subsequent option agreement, and that such consent was supported by consideration, namely, appellee's forbearance of its right to discharge appellant from its employ. The reasoning of the court below is summarized in its opinion as follows: "The plaintiff and defendant under the contract of April 11, 1942, had established a legal relationship which required defendant to purchase plaintiff's stock at a book value as of a certain date preceding the death or leaving of the employ of defendant by plaintiff. At the time the plaintiff agreed to the second notation quoted above, changing the contractual obligation of defendant to purchase the stock to an option or right to purchase said stock, the defendant had a clear right to discharge the plaintiff from its employ had it chosen to exercise this right. In our opinion its forbearance to do so, . . . for a period of years follow-

ing the agreement of plaintiff to accept the changed relationship pertaining to the shares of stock, constitutes legal consideration to support plaintiff's agreement. Jordan v. Sun Life Assurance Co., 366 Pa. 495 (1951) supports this conclusion. See also Langer v. Superior Steel Corp., 105 Pa. Superior Ct. 579, and Restatement, Contracts, §90.

"For the foregoing reasons we are of opinion that the entry of a compulsory nonsuit by the Trial Judge was legally correct and that the motion for its removal and a new trial was properly denied."

In passing upon the propriety of a judgment of compulsory nonsuit, we adhere to the principles that: (1) a nonsuit should be entered only in a clear case; *DiGiannantonio v. Pittsburgh Railways Co.*, 402 Pa. 27, 166 A. 2d 28 (1960); *Haddon v. Lotito,* 399 Pa. 521, 161 A. 2d 160 (1960); *Dunmore v. McMillan,* 396 Pa. 472, 152 A. 2d 708 (1959); (2) on appeal from a refusal to take off a compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of plaintiff. *Idlette v. Tracey,* 407 Pa. 278, 180 A. 2d 37 (1962); *Davies v. McDowell National Bank,* 407 Pa. 209, 180 A. 2d 21 (1962); *Smith v. Pittsburgh Railways Co.,* 405 Pa. 340, 175 A. 2d 844 (1961); *Donaldson v. Maffucci,* 397 Pa. 548, 156 A. 2d 835 (1959).

The trial record discloses the following testimony by appellant on the circumstances surrounding the surrender by him of his certificates and their return to him: "Q. Tell us about it. A. Mr. Edward Lanshe, who was then secretary of the firm, told me one Saturday, during that date that I just mentioned, that I was to bring in my stock certificates to be examined. My stock certificates were in a bank deposit box, and getting home late the next Friday night, I didn't have time to get them out. When I went over Saturday

morning Mr. Lanshe asked me for my stock certificates, and I told him I didn't have them. He said two words to this effect, 'Do you like your job with Bechtel, Lutz & Jost?' I said, 'Yes, sir.' He said, 'Do you want to continue to work here?' I said, 'Yes, sir.' He said, 'Then you see that those stock certificates are here next Saturday.' So the next Saturday I brought them in and presented them to Mr. Lanshe. Some time elapsed, they were handed back to me. Q. By whom? A. Mr. Lanshe. With the top paragraph marked 'void', and the new paragraph underneath. I did not examine that second paragraph as closely as I should have, I did not notice that there was a deviation in the meaning, but having full trust and faith in Mr. Bechtel, and Bechtel, Lutz & Jost, I signed them, and the certificates were given back to me. Q. Which was Paragraph 2? A. Yes."

We cannot, of course, condone appellant's failure to examine the certificates and note the obvious "deviation in meaning", and if this were the matter at issue, we should, in all probability, hold against him. The question, however, is whether there was consideration for his consent to the second notation.

Judge HESS, in his dissenting opinion below, aptly states that: "The majority of this court concludes that forbearance to discharge plaintiff from its employ is a sufficient consideration for the second endorsement upon the stock certificates which give to defendant the option to purchase the shares upon certain contingencies. . . . I respectfully dissent from this conclusion . . . . As I read the record a reasonable interpretation of the testimony of the plaintiff relative to his retaining his job, is that plaintiff would be retained if he brought in his stock certificates for examination. He did surrender the certificates for examination. I fail to see how forbearance to discharge can be related to the endorsement which subsequently appeared on the certificates.

This is especially true when we are considering the propriety of a nonsuit and are required to give to plaintiff the benefit of every reasonable inference arising from the testimony . . . ."

In light of the foregoing standards of review, we agree with Judge HESS that the jury should have been permitted to pass upon the evidence and determine whether the implied threat of discharge was related to the surrender of certificates for inspection or to the endorsements which finally were placed on them.

Further, we reject the argument that permitting the jury to pass upon the question is violative of the parol evidence rule. The rule is not involved as there is no attempt, here, to vary, alter or contradict the terms of the writing. The question which must be determined is whether the writing constitutes a contract. If consideration, or a substitute therefor, is lacking, no contract exists; the endorsement states no consideration and appellant is merely attempting to prove that there was none.

Giving appellant the benefit of every reasonable inference arising from the testimony, we find that the case is not so clear as to require its being taken from the jury.

Judgment reversed, new trial granted.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Plaintiff sued in assumpsit to recover from defendant the value of 12 shares of stock of defendant company at its book value on June 30, 1959, at the time he left the Company's employ. Plaintiff was a salesman for defendant company. On or about April 11, 1942 he purchased 3 shares of stock, in 1943 he purchased 5 shares of stock, in 1944 he purchased 2 shares of stock, and in 1945 he purchased 2 more shares of stock of the defendant company. On the

back of each of the four certificates of stock the following notation was set forth: "This stock certificate is held subject to a certain agreement between the registered holder hereof and Bechtel, Lutz & Jost, Inc., dated April 11, 1942, granting to Bechtel, Lutz & Jost, Inc., certain rights to purchase the stock represented by this certificate. Agreed to—J. Miller Kready."

The agreement dated April 11, 1942 was a written contract made between plaintiff and defendant, which provided (a) upon plaintiff's leaving the employ of defendant, defendant would purchase the 3 shares of stock held by plaintiff at book value, and (b) upon leaving the employ of defendant, plaintiff would surrender to the defendant his certificates of stock properly endorsed.

Between 1946 and 1950 the Secretary of defendant company told plaintiff that if he wanted to continue to work for defendant company, plaintiff should bring in his stock certificates, which plaintiff did. Some time later they were returned to plaintiff with the word *"Void"* written across the notation typed upon each certificate, and with a new notation typed thereon, to the effect that said shares were held subject to the right of defendant to purchase said shares upon the death of the plaintiff or upon his leaving its employ at book value. When the certificates were handed back to plaintiff, *he examined the new notation and signed his name and agreement thereto.*

Plaintiff now bases his claim for recovery under the 1942 agreement which was marked *"Void"*, and seeks to avoid and nullify the 1946 written agreement by parol evidence, which he contends shows (1) he did not clearly understand the word "Void" or the 1946 written agreement which he signed, and (2) that there was no consideration for this second or 1946 written agreement, and therefore the agreement of April 11, 1942 is binding upon the parties. No fraud,

accident, or mutual mistake was averred or proved. Plaintiff appeals from the judgment of nonsuit which was entered by the lower Court.

Several facts are clear as crystal—(1) Under the written contract of April 11, 1942, defendants had the right to terminate plaintiff's employment at any time they desired including the date when the second written contract (about 1946) was entered into; (2) plaintiff liked and wanted to keep his job; (3) plaintiff was threatened by defendants with the loss of his job unless he accepted the second agreement; (4) the reason and the consideration for defendants' retaining plaintiff in his job was plaintiff's willingness in 1946 to change the 1942 agreement from an obligation by defendants to purchase plaintiff's stock to an option to purchase plaintiff's stock. Forbearance by defendants to discharge plaintiff from employment and the resulting retention of his job was undoubtedly a benefit to plaintiff, and is adequate consideration in law for the second written contract which he now seeks to nullify.

Plaintiff now attempts—approximately 13 years after the aforesaid second written agreement was entered into by the parties—to repudiate and nullify this written agreement by parol evidence which was inadmissible, but, even if admissible, was (as we shall see) inadequate to prove want of consideration. The majority's decision unintentionally, but without the slightest doubt, *realistically,* undermines a myriad recent and controlling decisions of this Court on the parol evidence rule.

In *Caplan v. Saltzman,* 407 Pa. 250, 180 A. 2d 240, the Court said (pages 254-255) : "Notwithstanding the Agreement and the release above set forth, and notwithstanding there was no averment (and proof by clear and convincing evidence) that the agreement and release were executed as a result of fraud, accident or

mutual mistake—the Chancellor held that the release was invalid because of a failure of consideration, namely, a promise by defendant that a detailed formal account would be prepared and an accurate and full distribution of profits made in the near future. . . . if we assume arguendo that there was sufficient evidence to justify a finding that there was such an oral promise prior to the written agreement, the evidence of this prior parol promise and its breach would be inadmissible and insufficient to vary and negate the written Agreement.

"Although many attempts have been made to nullify, undermine, evade, circumvent and negate the modern parol evidence rule, the rule is now firmly established: Where the written contract covers or purports to cover the entire agreement of the parties, and there is no averment and proof that anything was omitted therefrom by fraud, accident, or mistake, all prior and contemporaneous negotiations, representations and verbal agreements are superseded by the written agreement, and parol evidence is inadmissible to alter or contradict or vary or add to or subtract from or modify or supersede the written contract: Pellegrene v. Luther, 403 Pa. 212, 214, 169 A. 2d 298; Fessman Estate, 386 Pa. 447, 450-451, 126 A. 2d 676; Bardwell v. The Willis Co., 375 Pa. 503, 100 A. 2d 102; Phillips Gas and Oil Co. v. Kline, 368 Pa. 516, 519, 84 A. 2d 301; Grubb v. Rockey, 366 Pa. 592, 79 A. 2d 255; Walker v. Saricks, 360 Pa. 594, 63 A. 2d 9; Gianni v. Russell & Co., Inc., 281 Pa. 320, 126 A. 791; Speier v. Michelson, 303 Pa. 66, 154 A. 127; O'Brien v. O'Brien, 362 Pa. 66, 66 A. 2d 309; Russell v. Sickles, 306 Pa. 586, 160 A. 610. Cf. also, Emery Estate, 362 Pa. 142, 66 A. 2d 262.

" ' "The Parol Evidence Rule has had a checkered career in Pennsylvania. Now that it has been well and wisely settled we will not permit it to be evaded

and undermined by such tactics. . . ."' Pellegrene v. Luther, supra.

"Defendant's alleged oral promise flies so flatly in the teeth of the parol evidence rule that to permit its admissibility in evidence, or to base a decree thereon, would completely destroy and wipe out the parol evidence rule."

In *Jordan v. Sun Life Assurance Company of Canada*, 366 Pa. 495, 77 A. 2d 631, that case is well summarized in the first paragraph of the syllabus:

"1. Where it appeared that plaintiff had entered into written agreements with defendant, which provided for plaintiff's services as a branch manager and his compensation; that, plaintiff was permitted to resign by letter which recited his desire that all contracts of any nature whatsover existing between himself and the company should be cancelled; and that plaintiff's suit was based on an alleged oral agreement made with defendant just prior to his resignation by which defendant agreed to settle plaintiff's outstanding debts and pay him a pension; it was *Held* that (1) the terms of the letter applied to and cancelled the alleged oral agreement; (2) there was consideration for the letter or resignation and it constituted a binding contract; (3) the letter was not a collateral writing but directly in issue;* and (4) the parol evidence rule was applicable and prevented proof of the alleged oral agreement."

Plaintiff would have us believe in the teeth of his conversation with defendants that defendants merely

---

* The parol evidence rule does not apply where the writing is collateral to the issue involved and the action is not based on such writing: *Jordan v. Sun Life Assur. Co. of Canada*, 366 Pa., supra; nor does it apply to receipts, letters, statements or books of account and other writings which do not purport to be a complete contract or vest or extinguish a legal right: *Bardwell v. The Willis Company*, 375 Pa., supra; nor does it bar *subsequent* written or oral agreements: *Pellegrene v. Luther*, 403 Pa. 212, 169 A. 2d 298.

wanted to look over plaintiff's stock certificate as if it was an entry in a beauty contest, or perhaps test the antiquity of the document or whether it was written in Sanskrit. What is the use of having a clear written agreement if one of the parties thereto can legally repudiate and escape it by saying that he did not read it as closely as he should have, or did not notice what it said or clearly understand what was so clearly set forth therein? What was this Chinese word which was so difficult for appellant to understand? The word "VOID", a word which a fourteen year old boy could understand, was written in enormous letters on plaintiff's stock certificate, and his new certificates gave defendants an option to purchase plaintiff's stock. How naive or how stupid can we permit an intelligent man to be, especially when his alleged naiveté or gross negligence permits him to circumvent and make a mockery of the parol evidence rule which for nearly forty years the Courts have so strongly endeavored to uphold against many attempted breaches or erosions.

The majority Opinion pays lip service to the parol evidence rule, but in practical effect and in reality erodes and negates it. Parol evidence is inadmissible to prove *lack* of consideration as distinguished from failure of consideration, where the written agreement is complete and evidences consideration: *Caplan v. Saltzman,* 407 Pa., supra, and *Bardwell v. The Willis Company,* 375 Pa., supra, and *Grubb v. Rockey,* 366 Pa., supra, all expressly hold that *lack* of consideration as distinguished from failure of consideration* cannot be proved to alter or contradict or nullify a written contract.

The majority Opinion states that there must be some consideration for a change in a written agreement by a subsequent written agreement, and "it is

---

* *Pronzato v. Guerrina,* 400 Pa. 521, 530, 163 A. 2d 297, holds that parol evidence is admissible to prove failure of consideration.

not clear what appellee meant in connection with the change in appellant's stock certificate." Plaintiff relies upon the following testimony:

"A. He asked me to bring in my stock certificate. . . . He said two words to this effect, 'Do you like your job with Bechtel, Lutz & Jost?' I said, 'Yes, sir.' He said, 'Do you want to continue to work here?' I said, 'Yes, sir.' He said, 'Then you see that those stock certificates are here next Saturday.' So the next Saturday I brought them in and presented them to Mr. Lanshe. Some time elapsed, they were handed back to me. Q. By whom? A. Mr. Lanshe. With the top paragraph marked 'Void', and the new paragraph underneath. *I did not examine that second paragraph as closely as I should have, I did not notice that there was a deviation in the meaning,* but having full trust and faith in Mr. Bechtel, and Bechtel, Lutz & Jost, I signed them, and the certificates were given back to me."

After the original stock certificates were changed and new certificates issued and delivered to and read by plaintiff, defendants kept plaintiff in their employ for 13 years. Over 400,000 unemployed in Pennsylvania, and approximately 6,000,000 unemployed throughout our Country would gladly testify to what is a matter of common, and therefore of judicial, knowledge, viz., a good position which they liked is a very valuable consideration.

For each of these reasons, I vigorously dissent.