## Kelly et ux. v. Yount, Appellant.

Argued April 21, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*William A. Challener, Jr.,* with him *William A. Challener,* for appellant.

*J. Campbell Brandon,* of *Brandon & Brandon,* for appellee.

OPINION BY HIRT, J., July 13, 1939:

In each of these appeals from judgments in favor of the plaintiffs, defendant contends that he is entitled to judgment non obstante veredicto on the ground that there is no evidence of negligence chargeable to defendant.

There is no dispute as to the facts. Defendant is a practicing physician with offices in the Plymouth Building, University Place, in Pittsburgh. On December 1, 1933, plaintiff, Mrs. Kelly, took her young son to defendant's offices for an examination and was directed to a waiting room adjoining defendant's x-ray room in the basement of the building. In the waiting room was a Mrs. Hay, a stranger to Mrs. Kelly, who also had brought her infant child for an examination. The x-ray room and the apparatus were in sole charge of a nurse-technician who called Mrs. Hay into the room and placed her child on the table preparatory to making x-ray photographs. Mrs. Hay was holding the child's shoulders, but the child was so restless that the technician in charge called the plaintiff, Mrs. Kelly, into the room and requested her to hold the child's feet. The table of the x-ray equipment was so close to the wall that Mrs. Kelly had to turn sidewise in taking a position between the table and the wall where she was directed to stand. In that position she was in contact with both the wall and the table. When Mrs. Kelly touched the child's feet she discovered that its stockings were wet. She called the attention of the technician to this fact, but was told that it was a matter of no importance. With Mrs. Kelly in that position the technician went to the opposite side of the room and turned on the electric current. Instantly there was a flash and a spark from the mechanism to Mrs. Kelly's head. The light in the x-ray machine immediately went out.

Mrs. Kelly fell to the floor and apparently struck a cable which was part of the equipment. Her actions were those of one in convulsions. Instructing Mrs. Hay not to touch Mrs. Kelly, the technician went for help and returned with one of the doctors followed shortly by the defendant, Doctor Yount. Mrs. Kelly was then lying in a pool of blood on the floor and was unconscious. The electric spark burned a hole in her hat, caused a burn on her head, and the current presumably passed through her body, coming out at the toe of her left foot, burning a hole through her shoe. The damages awarded, resulting from her injuries, were not excessive in amount, and no complaint is made on that score. No evidence was offered on behalf of the defendant, but motions were made for binding instructions which were refused.

This action is not founded upon the alleged malpractice of a physician and is clearly distinguished from that class of cases. Where the claimant is a patient of a physician applying x-rays in the course of treatment, the jury may not infer negligence from the existence of resulting burns alone, in the absence of proof that the apparatus was different from that ordinarily in use or that the operator, through lack of training or otherwise, was incompetent to operate it. Burns do occasionally occur in the ordinary course of the exposure in spite of the highest diligence and skill to prevent them (*Stemons v. Turner*, 274 Pa. 228, 117 A. 922) and no liability attaches, prima facie, for injury resulting from the use of a dangerous agency by a physician in the treatment of a patient: *Nixon v. Pfahler*, 279 Pa. 377, 124 A. 130.

This wife plaintiff, however, was not in the x-ray room for treatment and was a stranger to the patient. She was there at the request of the technician in sole charge; she followed the instructions given her and, therefore, did not assume the risks which a patient must assume. In cases of this nature a definite burden of

producing evidence is imposed upon the defendant. The controlling principle of law is not res ipsa loquitur, but a kindred rule stated in *Shafer v. Lacock,* 168 Pa. 497, 32 A. 44, and reiterated in many later cases as follows: "When the thing which causes the injury is shown to be under the management of the defendants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from a want of care," and the burden is upon the defendants of establishing their freedom from fault: *Knox v. Simmerman,* 301 Pa. 1, 149 A. 644; *Maltz v. Carter,* 311 Pa. 550, 166 A. 852. "There is a class of cases in which accidents are attended by circumstances from which the inference of negligence is legitimate. But in such cases negligence is not a presumption of law. It is a finding of fact, and before the fact can be found a jury must consider the circumstances, reason on them and draw the inference of negligence. We held in *Maerkle v. Pittsburgh Rys. Co.,* 311 Pa. 517, 165 A. 503, that the burden resting upon a plaintiff to show defendant's negligence in certain types of cases was met by proof of circumstances reasonably giving rise to that inference. Negligence cannot be presumed from the mere fact of the happening of an accident, but it may be inferred from the attendant circumstances": *Wright v. Straessley,* 321 Pa. 1, 182 A. 682. Since no evidence was produced on behalf of defendant, the unusual injury to this plaintiff from apparatus wholly under the management of defendant's agent, supplies the unexplained circumstances from which the jury were justified in finding as a fact that the operator was negligent.

Moreover, the technician in charge, as to plaintiff, must be regarded as acting within the scope of her employment. "Acts may be said to be within the scope of the servant's employment where specifically directed,

or where they are clearly incidental to the master's business. It is not essential that the act be specifically authorized by the master. An act is within the scope of the servant's employment, where necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master: 39 C. J. 1283. ......If, however, the injury occurs while the actor is employed in the usual course, and for the benefit of the owner, there is a presumption that the servant is acting within the scope of his authority: *Moon v. Matthews,* 227 Pa. 488; *Petrowski v. P. & R. Ry. Co.,* 263 Pa. 531; *Blaker v. Phila. El. Co.,* 60 Pa. Superior Ct. 56. Where the facts disclose the servant to be so engaged, in furtherance of the master's business, the latter is liable though the former is disobeying orders given (*Dunne v. P. R. R. Co.,* 249 Pa. 76; *Luckett v. Reighard,* 248 Pa. 24; *McClung v. Dearborne,* 134 Pa. 396; *Marcus v. Gimbel Bros.,* 231 Pa. 200; *Brennan v. Merchant & Co.,* 205 Pa. 258; *McCaffrey v. Lukens,* 67 Pa. Superior Ct. 231)." *Schroeder et ux. v. Gulf Refining Co.* 300 Pa. 397, 150 A. 663.

It is admitted that the technician was defendant's servant. The taking of x-ray photographs was within the scope of her employment, and her implied authority involved not only the proper manipulation of the apparatus but the control of the patient as well, to attain the desired results. Her act in inducing another to assist in holding the patient, even though not actually authorized, was nonetheless incidental to the master's business and in furtherance of it, and defendant is responsible for the result.

Judgments affirmed.