Schwartz, Appellant, *v.* Warwick-Philadelphia
Corporation.

Argued December 5, 1966. Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*N. Carl Schwartz,* for appellants.

*Roger B. Wood,* with him *Joseph R. Thompson,* for
appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 20, 1967:

It was a wedding banquet and the guests were enjoying themselves in the traditional custom of nuptial celebrations. There was dining and dancing and then dancing and dining. Fork work interspersed with footwork. The banquetters would enjoy a spell of eating and then amble out to the dance floor to dance. When the music suspended, the dancers returned to their tables and became diners again. The mythical playwright who prepares the script for the strange and sometimes quixotic episodes which eventually end up in court, mixed his stage properties and characters in this presentation because he placed in the center of the dance floor a quantity of freshly cooked asparagus and ladled over it a generous quantity of oleaginous asparagus sauce. In this setting it was inevitable that something untoward would happen, and it did. One of the performers in the unrehearsed play described what occurred.

Joseph Rosenberg, tall, weighing 185 pounds and wearing a tuxedo suit, was dancing with his sister-in-law, Mrs. Ruth Schwartz who was wearing a gold lamé dress, made of a metallic brocade material when, as he describes it, "I went up in the air and flipped on my back, my buttocks, and I pushed her down, and as I pushed her down, I let go, and she hit the floor, and my feet went up in the air."

Were it not for what he testified later, the casual reader could assume Joseph Rosenberg was merely describing one of the modern dances which, in acrobatic manipulations and grotesque gyrations, sound no less exotic than the wild movements narrated above. Rosenberg explained, however, that the terpsichorean maneuver he executed was involuntary. He said he was a veteran of the ball room with some 35 years of successful dancing behind him and he had never pre-

viously done such a flip as he described. He said that his excursion into space rose from an asparagus pad in the middle of the floor, and that after he got up he noted his pants were "green and white, like sauce."

His dancing partner, Mrs. Schwartz, confirmed Rosenberg's testimony and stated that as a result of the squashed asparagus floundering, her dress was covered with "strings of like green asparagus," and that the stain was 8 inches wide and 15 inches down from the side. In addition, the floor was wet for a distance of 3 feet with asparagus and sauce. Mr. Schwartz, the husband of Mrs. Schwartz, testified that immediately after the tumble occurred, "I rushed over and there they are sitting in a spill of green substance and sauces, and it was spread over quite an area . . . the area seemed to be full of liquid and asparagus." He saw that Rosenberg's shoe was full of the "green substance," and that the sole of the shoe was green and "there seemed to be something sticking to it near the heel."

Twenty minutes after the dine-and-dance debacle, Mr. Rosenberg and Mrs. Schwartz left the hotel, bruised, sore, and asparagus-laden, and in due time brought an action in trespass against Warwick-Philadelphia Corporation, the caterers of the wedding feast.

At the end of the ensuing trial, the judge entered a compulsory nonsuit, asserting that the plaintiffs had not established a prima facie case of negligence or proximate cause. There was evidence that the waiters carrying food to the tables not only walked over the dance floor, but did so while the dance was in progress. Since the dancing space was not large, it happened that the dancers and waiters sometimes competed for passage and, while no one testified to actually seeing asparagus slide from an uplifted tray, the jury could easily have found that in the gridiron clashes between

dancers and waiters the asparagus fumbled out of the trays and onto the floor. How else did it get there?

The trial judge, an ex-veteran congressman and thus a habitue of formal parties and accordingly an expert in proper wearing apparel at such functions, all of which he announced from the bench, allowed testimony as to the raiment worn by the banquetters. All the men were attired in tuxedos, the pants of which were not mounted with cuffs which could transport asparagus and sauce to the dance floor, unwittingly to lubricate its polished surface. Ruling out the cuffs of the tuxedo pants as transporters of the asparagus, the judge suggested the asparagus, with its accompanying sauce, could have been conveyed to the dance floor by "women's apparel, on men's coats or sleeves, or by a guest as he table hopped." The judge's conclusions are as far-fetched as going to Holland for hollandaise sauce. There was no evidence in the case that anybody table hopped; it is absurd to assume that a man's coat or sleeve could scoop up enough asparagus and sauce to inundate a dance floor to the extent of a three-foot circumference; and it is bizarre to conjecture that a woman's dress without pockets and without excessive material could latch on to such a quantity of asparagus, carry it 20 feet (the distance from the tables to the dance floor) and still have enough dangling to her habiliments to cover the floor to such a depth as to fell a 185 pound gentleman with 35 years' dancing experience who had never before been tackled or grounded while shuffling the light fantastic.

A nonsuit must be based on fact and not on supposition, on testimony and not conjecture, on realities and not guesses. Since no one questioned the presence of asparagus and sauce on the dance floor where assuredly it should not have been, since there is no evidence it was carried there by guests because the trial judge's hypothesis that it could have gotten there

hanging on to the men's coattails or women's dresses must be dismissed as visionary, since there was direct evidence that waiters transported asparagus across the floor aloft on trays, and there was evidence that waiters physically jostled dancers and, since it is not difficult to conclude that in a clash between a hurrying waiter and a dancer writhing in the throes of a watusi, frug, twist, jerk or buzzard, the resulting jolt would tilt the tray, cascading asparagus and sauce to the floor to throw the terpsichorean gymnasts off balance, it is reasonable, proper, and fair to conclude that this concatenation of circumstances made out a prima facie case of negligence against the establishment running the wedding feast. It requires no citation of authority to demonstrate that a waiter with a tray balanced on an uplifted arm is out of place on a ballroom floor during a late twentieth century dance which would make the Apache war dance seem tame in comparison.

Nor are the plaintiffs in this case required to rule out every possible hypothesis for the happening of the accident, including the coathanging asparagus flight of fancy of the trial judge, except the thesis on which they base their cause. This Court said in *Smith v. Bell Telephone Co. of Pa.*, 397 Pa. 134, "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. . . The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant. . . The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way." In *Liguori v. Philadelphia*, 351 Pa. 494, we said: ". . . since proof to a degree of absolute certainty is rarely attainable in any litigated

factual controversy, the law requires only that the evidence as to the operative cause of the accident be enough to satisfy reasonable and well-balanced minds that it was the one on which plaintiff relies."

The law applicable to a case of this kind was expounded as recently as 1961 in a case where the facts were somewhat similar to the ones at bar. *Lederhandler v. Bolotini*, 402 Pa. 250. The plaintiff there was injured when she fell on an apple strudel which had fallen to the floor, also used for dancing. The defendant maintained he could not be held liable for the appearance of the strudel on the floor because it could not be linked to any of his waiters, arguing specifically: " 'To find as a fact that it [the strudel] got there as a result of defendant's negligence one must resort to the use of an inference viz., strudel was served at the dinner, hence one of the waiters must have dropped a piece.' " We affirmed a judgment in favor of the plaintiff, stating: "A caterer who serves meals and has charge of the premises in which they are consumed has the responsibility to clear the premises of food which he or his staff allows to escape to the damage of others; or, if it gets to the floor through the intervention of someone else, the caterer is liable for any resulting damage if it remains on the floor a sufficient period of time for him to be aware of its presence, actually or by constructive notice. . . We have held that the time of constructive notice depends on the particular circumstances of the case. In Branch v. Phila. Trans. Co., 374 Pa. 60, 65, we said that 'there could conceivably be a situation where 5 minutes would be adequate notice and where 5 hours would be inadequate notice.' "

Moreover, if it is established that the alleged tortious act was the result of the defendant's active negligence, constructive notice need not be proved. The waiters here were admittedly employed by the defend-

ant and if they negligently dropped asparagus to the floor, their acts, under the principle of respondeat superior, were the acts of the employer. In *Clark v. Glosser Bros. Dept. Stores, Inc.,* 156 Pa. Superior Ct. 193, the plaintiff was injured by tripping over some tape which had fallen to the floor in a department store. The tape had been used for holding bundles together on the tables. The defendant admitted it was possible for the tapes to fall or be thrown to the floor but denied liability by asserting that there was no constructive notice of the alleged dangerous condition on the floor. In sustaining judgment for the plaintiff, the Superior Court said there was no necessity to prove constructive notice: "Plaintiff's proof, which must be accepted on this appeal, shows that the injuries sustained by her were due to the direct negligence of the defendant's employes in throwing the tapes in the aisles or not taking reasonable precaution to prevent their falling to the floor, so that the question of constructive notice was not of vital importance. The defendant's employes had actual notice of their own alleged negligent acts, which were within the apparent scope of their authority and in the furtherance of the master's business. The defendant is accordingly chargeable with their dereliction. Kelly et ux. v. Yount, 135 Pa. Superior Ct. 528."

The evidence presented at the trial in the instant case made out, if accepted by the jury, a prima facie case of negligence, and the plaintiffs were entitled to have the jury pass on the issues involved.

Judgment reversed with a procedendo.

Mr. Justice JONES, Mr. Justice O'BRIEN and Mr. Justice ROBERTS concur in the result.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

One cannot help wondering if plaintiffs had, in the alleged 35 years of dancing, ever been to any dance, let

alone a wedding banquet dance. There was no evidence of constructive notice; moreover, plaintiffs undoubtedly voluntarily assumed the risk of this banquet dance floor which was obviously periled with asparagus sauce, winding waiters, and grotesque exotic tribal dancing under modern names. A dancer cannot, with legal sanction, look only into the captivating eyes of his lovely partner.

I certainly dissent.