McMillan et vir, Appellants, *v.*
Mountain Laurel Racing, Inc. et al.

Argued November 20, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John E. Evans, Jr.*, with him *Dale T. Lias*, and *Evans, Ivory & Evans*, for appellants.

*Arthur R. Gorr*, with him *Daniel B. Winters*, *William J. Lancaster, James A. Beinkemper*, and *Stein & Winters*, for appellees.

Opinion by Van der Voort, J., April 22, 1976:

The instant appeal arises, after post-trial motions, from the entry of a compulsory nonsuit, at the close of the plaintiffs' evidence on liability. The case involves a suit for damages arising out of injuries suffered by the appellant wife, Dorothy McMillan, at the Meadow Lands, a horse racing track in Washington County. The appellees-defendants are: the Washington Trotting Association — the owner of the racetrack; Global Development Corporation — the owner of stock of Washington; and Mountain Laurel Racing, Inc. — the lessee of the track, conducting racing meets as well as betting operations.

Additional defendants were Universal Security Consultants, Inc., and Arthur G. Cohen, trading and doing business as Universal Security Consultants, who provided security services at the track, and Harry M. Stevens, Inc., lessee of refreshment stands in the grandstand of the Meadow Lands. Because of the nature of the disposition of the case by nonsuit in the court below, the issue of liability of the additional defendants could not be determined as the original defendants had no need to present their actual defense. None of the parties to this appeal discuss any issue relating to the possible liability of the additional defendants since the sole question on appeal is whether the nonsuit was properly entered at the conclusion of production of the plaintiff's liability evidence.

A nonsuit should be entered only in a clear case. *DiGiannantonio v. Pittsburgh Railways Company*, 402 Pa. 27, 166 A.2d 28 (1960); *Dunmore v. McMillan*, 396 Pa. 472, 152 A.2d 708 (1959). As our Court said in *Borisoff v. Penn Fruit Company, Inc.*, 165 Pa. Superior Ct. 572, 574, 69 A.2d 167 (1949):

"... a nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing

principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved."

See also *De Gregoris v. Stockwell Rubber Company, Inc.,* 235 Pa. Superior Ct. 71, 340 A.2d 570 (1975); *Denver v. Sharpless,* 191 Pa. Superior Ct. 554, 159 A.2d 7 (1960). Of course, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of the plaintiff. *Miller v. McMinn's Industries, Inc.,* 410 Pa. 234, 188 A.2d 738 (1963); *Idlette v. Tracey,* 407 Pa. 278, 180 A.2d 37 (1962). If the trial court determines, in entering nonsuit, that plaintiff's evidence showed his own contributory negligence or assumption of the risk, such disabling factors must appear so irrefutably from the evidence that to permit a jury to absolve plaintiff would be to elevate caprice over legally conclusive fact. *Leaman Transportation Corporation v. Philadelphia Transportation Company,* 358 Pa. 625, 57 A.2d 889 (1948). The evidence of contributory negligence or assumption of the risk must be clear and undisputed before nonsuit can be entered. *Borisoff v. Penn Fruit Company, Inc., supra.* The lower court held in the instant case that plaintiff-appellant had failed to prove any negligence on the part of any defendant, and moreover declared that Mrs. McMillan was contributorily negligent and had assumed the risk of harm as a matter of law. Mindful of the above-stated principles of law, we find that we cannot agree with the lower court's entry of compulsory nonsuit in this case.

Our review of the evidence presented by appellants shows facts which, when taken alone, are supportive of plaintiff's theory of negligence. The appellant wife's accident occurred on June 9, 1971, when she attended a night session of races as a patron at the Meadow Lands track. Accompanied by her husband and a family friend, Mrs. McMillan (appellant) was situated at a table at one

end of a very large room which the parties describe as the ground floor of the grandstand. The room was two hundred and fifty (250) feet long and from eighty (80) to one hundred and twenty-five (125) feet wide. There were thirty-two (32) to thirty-four (34) betting windows situated like an island in the middle of the floor. In addition, four (4) refreshment stands, each about twenty-five (25) feet long, were situated along one side of the room.

On the evening in question, Mountain Laurel had approximately forty-five (45) employees employed in the above-described room. Washington also had employees active on the premises that night, including a clean-up crew of several persons. Under Washington's lease with Mountain Laurel the former was responsible for cleaning and maintenance. A room was provided for a maintenance official.

At the time of the accident, the McMillans and their companion had been at the track for two and a half hours. Testimony showed that about a thousand other patrons attending the races were situated in the same first floor area of the track. All four refreshment stands were in operation.

The testimony offered by the plaintiffs showed that the floor of the room in question became increasingly littered as the races progressed. This litter included tickets, paper food and beverage containers and amounts of various types of liquid refreshments (including beer, soft drinks and coffee) which had either been purposely discarded or accidentally dropped by patrons. As Mrs. McMillan returned to her table after placing a wager at one of the ticket windows, she had to pass by the front of a refreshment stand. In so passing, she slipped and fell, suffering injuries. Her testimony concerning the fall is well summarized by the following answer she offered in response to a question as to what occurred:

"I slipped and I fell, and it was something on the floor, whether — my trousers was wet in the back —

but I don't know what I slipped on. There was paper cups and stuff all over the floor, but I don't know what I slipped on."

Under further questioning, she expressed the belief that she had been caused to fall by the liquid, cups, papers, or tickets on the floor, although she could not pinpoint the exact substance or object she had been caused to slip on.

The appellants also offered other testimony and evidence supportive of their theory of negligence. Testimony was entered that the floor was quite littered and wet, especially in the area of the refreshment stands. Moreover, the floor, according to the evidence offered, was of a shiny composition surface which became slippery when wet, and was slippery at the time and place of the fall. Also, plaintiff's testimony showed that the floor area was not cleaned during the races and attendant accumulation of debris and liquid, despite the opportunity to do so by track authorities responsible for cleaning.

The appellants reason that Mrs. McMillan was a business invitee to the track premises, and that the possessors of the building took no steps to clean up a wet, littered and slippery surface which she had to traverse. The appellant cites several sections of the Restatement of Torts, 2d:

"§341 A. Activities Dangerous to Invitees
A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it.
§343. Dangerous Conditions Known to or Discoverable by Possessor
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care

would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

§343 A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

§344. Business Premises Open to Public: Acts of Third Persons or Animals

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

The appellant, citing these sections, contends that the operators of the track must be held liable to business invitees (like Mrs. McMillan) for the harm caused by the

known and obvious dangers of a littered and wet floor surface.

In examining the various passages of the Restatement, 2d, we find the Reporter's Notes to be instructive and pertinent. For instance, the comment to §341 A notes, *inter alia*, that the possessor of land must extend protection to a business invitee:

"... against the risk of harm from activities of which the invitee knows or has reason to know, where it may reasonably be expected that he will fail to protect himself notwithstanding such knowledge." Section 343 includes the following as part of the Reporter's Commentary:

"e. Preparation required for invitee. In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance. One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors. On the other hand, one entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors."

In the explanation of Section 343 A, the Reporter noted, among others, the following examples:

"5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, *whose condition is visible and quite obvious.* C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C." (Emphasis added.)

and

"8. The only convenient approach from the east to the station of A Railroad is over a footbridge which, through the negligence of the Railroad, is *covered with snow and ice. The condition of the bridge is obviously dangerous, but not extremely so.* The only other approach to the station, from the west, would require a detour of six blocks. B, a prospective passenger coming from the west, attempts to use the bridge rather than detour, and slips and is injured. A Railroad is subject to liability to B." (Emphasis added.)

With respect to Section 344, the Reporter notes its direct application to places of amusement and explains that invitees must be affirmatively protected by the possessor from harm which might arise out of likely acts of third persons (i.e., other patrons) in their conduct on the premises.

The appellant's theory of appellee's negligence is that the latter failed to exercise due care to clean the existing debris and wetness which caused the walking surface to become slippery. They contend that even if a patron like Mrs. McMillan could observe or knew of the debris and wetness which accumulated, such situation would not lead a patron to an obvious belief that the surface was hazardous to traverse and would inevitably lead to a loss of footing or balance. A plethora of cases is cited to support the appellant's position. In *Bowman v. Fretts & Leeper Construction Co.*, 227 Pa. Superior Ct. 347, 350, 322 A.2d 719 (1974), our Court (discussing §§343 and 343A) sustained a judgment for a plaintiff who fell through a hole in the floor, despite evidence of the plaintiff's knowledge of the hazard, since the possessor had not taken steps to protect against the risk. Certainly, the appellants' evidence showed that other patrons had deposited a great deal of the debris on the floor of the Meadow Lands grandstand which was not cleaned or removed by appellees. In *Moran v. Valley Forge Drive-In*

*Theater, Inc.*, 431 Pa. 432, 246 A.2d 875 (1968)[1] and *Haugh v. Harris Brothers Amusement Company*, 315 Pa. 90, 172 A. 145 (1934), our Supreme Court recognized the obligation of proprietors of amusement places to protect their patrons from harm caused by customary careless (or even criminal) conduct of other patrons. See also *Sims v. Strand Theater*, 150 Pa. Superior Ct. 627, 29 A.2d 208 (1942). In *Kuminkoski v. Daum*, 429 Pa. 494, 240 A.2d 524 (1968), the Supreme Court held that the issue of defendant's negligence was for the jury where the plaintiff, a business visitor, had slipped on a mixture of sawdust, wood chips, and fine gravel that coated the treads of the descending exit. In *Katz v. John Wanamaker Philadelphia, Inc.*, 381 Pa. 477, 112 A.2d 65 (1955), the operator of a department store was held liable when plaintiff fell in a quantity of dirt and water on the steps. All of these cases and the sections of the Restatement 2d cited above support appellant's position that the jury should have been given the opportunity to consider the issues of negligence in the instant case.

The lower court and appellees rely heavily upon the argument that Mrs. McMillan did not specifically identify the exact cause of her fall. Mrs. McMillan's testimony, as set forth earlier in this Opinion, was that while she did not know the exact object or liquid "... it was something on the floor." The lower court stated that she did not identify the cause of her fall and "The inference that she slipped on a clean dry portion of the floor is equally deducible." In reaching this conclusion in the context of ruling on a request for compulsory nonsuit, the lower court clearly abused its discretion. The court is not to reach a conclusion after balancing all of the evidence in this situation. Rather, uncertainties in the evidence must be resolved in favor of the plaintiff, and nonsuit is improper if this is not done. Moreover, as our

---

1. The court relied, in part, upon the rule set forth in §344 of the Restatement, 2d.

Supreme Court said in its opinion in *Schwartz v. Warwick-Philadelphia Corp.*, 424 Pa. 185, 189, 226 A.2d 484 (1967):

> "This Court said in *Smith v. Bell Telephone Co. of Pa.*, 397 Pa. 134, 'It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability ... The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant ... The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way.' "

In the *Schwartz* case, *supra*, plaintiffs recovered against hotel proprietors after suffering a fall on a dance floor; the plaintiffs discovered food on their clothing after the fall and the same food substance was found on the dance floor in the area of the fall. In the instant case, we believe that appellants' proof identified the cause of Mrs. McMillan's fall with enough sufficiency to allow the jury to determine questions of negligence.

We could conclude our review at this stage but for the lower court's additional finding that appellants' evidence supported the unalterable conclusion as a matter of law that Mrs. McMillan was contributorily negligent and/or had assumed the risk of harm which befell her. We cannot agree with either of the lower court's holdings.

With respect to contributory negligence, the lower court stated: "We believe that Dorothy [Mrs. McMillan] was contributorily negligent in failing to observe any dangerous condition that would have been obvious had she looked. ..." Testimony by the appellant wife showed she was proceeding through an area which was crowded and congested with other patrons when she fell. She

testified that she was looking straight ahead as she walked through this crowd, so as to avoid bumping or being bumped by others, only a foot or two from her, as she proceeded. Common sense dictates that one would act in this manner when walking through a congested area, rather than walking with one's eyes directed straight downward towards the walking surface. Certainly, in such crowded circumstances, the ground would be obstructed by the bodies of others, except for a small area at one's feet. Indeed, it would appear to have been negligent to walk with one's sight affixed to the floor at such a time, and would certainly invite constant collisions and bumping with other patrons. In any event, it is clear that a plaintiff's contributory negligence is a jury question in these circumstances where the view of the walking surface was obscured by other persons or objects. *Seng v. American Stores Co.*, 384 Pa. 338, 121 A.2d 123 (1956); *Duvall v. City of New Castle*, 74 Pa. Superior Ct. 573 (1920).

The lower court also found assumption of the risk as a matter of law, reasoning that Mrs. McMillan had full knowledge of the debris and litter on the floor. While we can imagine risks, including the loss of wagering funds and possibly damage to one's nerves, in attendance at a horse racing facility, we cannot affirm a holding that one attending the races or any similar entertainment or amusement, must *expect* to walk on a slippery floor, even if littered. We find the Supreme Court's observation in *Oberheim v. Pa. Sports & Enterprises, Inc.*, 358 Pa. 62, 68, 55 A.2d 766 (1947), to be particularly appropriate:

> "The appellant's contention that Mrs. Oberheim voluntarily assumed the risk of injury and is therefore barred from recovery is equally without merit. It will readily be conceded that an invitee of an ice skating rink assumes the ordinary risks incidental to the sport, such as the risk of injury from falling because of imperfections and inequalities on the surface of the ice reasonably to be anticipated.

(Citation omitted). But, the invitee is not to be held to have assumed risks arising beyond the skating area from dangerous conditions of entrance and exit originating from other than the ordinary and foreseeable possible effects of skating on the ice. Here, likewise, the fact that Mrs. Oberheim may have known that an irregular and rough area existed in the passage way to the rink does not impel a legal conclusion that she assumed the risk of her injury. (Citation omitted.)"

The lower court's finding of assumption of the risk, as a matter of law, is clearly erroneous.

Reversed and remanded for new trial.

DISSENTING OPINION BY PRICE, J.:

To my view the majority opinion in this appeal could well be entitled "Requiem for Compulsory Non-Suit." If there was ever a case where the entry of a compulsory non-suit was proper, this is such a case. The majority quite accurately summarizes the factual situation as presented by appellants' testimony and also quite accurately summarizes the duties of an appellate court upon review in such a situation.

However, after so doing, they conclude that appellants are entitled to go to a jury. I must strongly disagree with that conclusion.

The obvious weaknesses of appellants' case are numerous. The first is that appellants are unable to prove what, if anything other than the floor tile, the appellant wife slipped on, and even if the inference could be drawn that she slipped on debris or liquid, it was not a hidden danger or peril which a reasonably prudent invitee would not have seen. It seems to me that the law is clear that evidence to inferentially establish causation for a fall because wetness was seen on a floor and the back of the person's clothes were damp is insufficient to infer a cause or constructive notice. Further the law is well settled that there is no duty to guard or warn a

guest or business visitor against a danger that is known or obvious and that a business visitor who enters and remains upon another's land with full knowledge of the risk of injury created by the activity thereon, assumes the risk and may not recover.

Appellate courts of this state have over recent years been narrowing the historic concept of compulsory non-suits. Until today I had recognized that the concept was on the critical list but had held hopes for its ultimate recovery. With today's decision I abandon that hope, and although the name lingers on in our procedural rules and in our reports, I feel that it will soon fade to a dim memory of better days gone by.

Quite obviously I would affirm the entry of the compulsory non-suit by the lower court.

JACOBS, J., joins in this dissenting opinion.