**Janet and Jerome MEDDICK, Husband and Wife, Plaintiffs,**

v.

**BROOKDALE RESORT, INC., Defendant.**

### No. CV–94–0746.

United States District Court, M.D. Pennsylvania.

Jan. 5, 1995.

Gregory E. Sciolla, Barry L. Cohen, Leonard, Tillery & Sciolla, Philadelphia, PA, for plaintiffs.

Timothy G. Lenahan, Lenahan & Dempsey, Scranton, PA, for defendant.

## MEMORANDUM

VANASKIE, District Judge.

This suit involves a slip and fall in February of 1993 on the premises of the Defendant, Brookdale Resort, Inc. ("Brookdale"). Presently pending are Brookdale's motions for summary judgment, (Dkt. Entry # 9), and to strike the affidavit of Plaintiff Janet Meddick, (Dkt. Entry # 16).

Brookdale contends that Janet Meddick's affidavit is too conclusory and not based on personal knowledge. Because Janet's affidavit of October 30, 1994, does not fail to comport with Federal Rule of Civil Procedure 56(e), Brookdale's motion to strike will be denied.

The summary judgment motion is premised upon Plaintiffs' alleged inability to identify the cause of her fall and Janet Meddick's purported assumption of the risk. Because the Meddicks have presented sufficient facts to establish a triable issue as to the actual cause of Janet's fall, and because reasonable minds could disagree whether Janet deliberately and with the awareness of specific risks inherent at the time of her fall nonetheless walked upon the ice that allegedly caused her injury, Brookdale's motion for summary judgment will be denied.

## I. Factual and Procedural Background

Janet and Jerome Meddick were guests at the Brookdale resort at the time of Janet's accident on February 18, 1993. On that date, the Meddicks went to the Brookdale Lodge at approximately 4:00 p.m. Snow flurries were gusting at the time. The Meddicks left the lodge shortly before 5:00 p.m. to go to their townhouse. By this time, snow was falling steadily and continued to do so through the time of the accident. The Meddicks left their townhouse about 7:10 p.m. to walk across the parking lot to their car. Janet slipped and fell before she stepped into her car.

Brookdale filed the instant motion for summary judgment on September 14, 1994. In response to Brookdale's contention that Janet did not know with certainty the cause of her fall, the Meddicks filed an affidavit exe-

cuted by Janet, in which she states, *inter alia,* "I know that I fell on the ice...." (Dkt. Entry # 13 at Ex. "E.") On October 14, 1994, Brookdale moved to strike Janet's affidavit.

## II. Discussion

### A.

In arguing that the Meddicks failed to establish the cause of Janet's fall, Brookdale relies upon Janet's following deposition testimony:

Q. And at the time you fell, do you know specifically what it was that caused you to fall?

A. ... As I was getting up [after my fall], I couldn't get a firm hold on the ground, because I kept slipping ... and I could tell at the time I was on solid ice. There's like, little bumps. I could, at least, get a grip on that.... So *it was my assumption I fell because of the ice,* which wasn't really as apparent because of the dusting of snow.

(Janet's Dep. at 54–55 (emphasis added).)[1] In her affidavit, Janet averred:

I fell on ice which was formed in little bumps underneath the snow below my feet.... I know that I fell on the ice and it was formed in little bumps.... [Affidavit attached as Ex. "E" to Dkt. Entry # 13.]

In moving to strike this affidavit, Brookdale argues that it does not comply with Fed.R.Civ.P. 56(e) for the following reasons: 1) no evidence exists to substantiate Janet's "personal knowledge of the matters referred to in her affidavit"; and 2) the "affidavit provides ultimate or conclusory facts and has no probative value." (Dkt. Entry # 16 at

¶ 5.)[2] The affidavit, however, does not violate Fed.R.Civ.P. 56(e), for Janet merely states that which occurred in her accident. It is based on personal knowledge and speaks to the event which forms the very heart of this suit. Brookdale's motion to strike consequently will be denied.

### B.

Relying solely upon Janet's deposition testimony, Brookdale argues that the Meddick's did not establish what caused Janet's fall. (*See* Dkt. Entry # 10 at 6.) Brookdale relies on, *inter alia, Burke v. Leader Dogs for the Blind,* 516 F.Supp. 1374 (E.D.Pa. 1981), and *Rogers v. South Philadelphia National Bank,* 160 Pa.Super. 154, 50 A.2d 697 (1947). In *Burke,* 516 F.Supp. at 1375, the plaintiff, who was "blind, fell and suffered injuries when his seeing eye dog, supplied to him by defendant, reacted to the presence of another dog in the vicinity." The evidence considered by the court consisted of the deposition testimony of an eyewitness who viewed the accident from across the street. *Id.* The witness testified that the accident occurred on the "sidewalk [which] contained uneven bricks uprooted by a tree." *Id.* The court, in granting summary judgment to the owner of the sidewalk, concluded that no evidence linked "the uneven bricks to plaintiff's fall." The court reasoned that the plaintiff needs "to prove 'what *actually* caused the accident, not what *might* possibly have caused it.'" *Id.* (emphasis in original).

In *Rogers,* 160 Pa.Super. at 156, 50 A.2d 697, the slip and-fall plaintiff testified that as she was walking, "she was 'hurled to the pavement'"—and this description effectively constituted the only evidence about how the accident happened. The plaintiff examined

---

1. Janet's deposition testimony established that she was aware that snow had fallen steadily in the hours prior to her accident. (*Id.* at 52.) She knew that there was ice underneath the falling snow. (*Id.*) She also knew that she could fall while walking on ice. (*Id.* at 48.) The Statements of Material Facts submitted by the parties, (Dkt. Entry nos. 11 & 14), indicate that they disagree about whether Janet specifically knew what caused her fall; the quantity and quality of the snowfall; and whether Janet knew there was ice underneath the snow where she fell.

2. Brookdale argues that Janet's assertions "are akin to a statement made upon information and belief which has no probative value," citing *Carey v. Beans,* 500 F.Supp. 580 (E.D.Pa.1980), in which the court struck those paragraphs of an affidavit that began with phrases such as "I believe." Additionally, Brookdale argues that the affidavit is self-serving and in conflict with Janet's deposition testimony. Both points fail because, first, her statements are more definite than statements made upon information and belief. Second, Brookdale may impeach Janet during trial regarding any alleged inconsistencies.

the site of the accident a few minutes afterwards and "found this pocket in the pavement, and it was shaped exactly like a heel," which the plaintiff alleged was the defect that established the defendant's negligence. *Id.* The court concluded that the plaintiff failed to show that her injuries resulted because of the defendant's negligence.

In contrast to those cases, in *McMillan v. Mountain Laurel Racing, Inc.*, 240 Pa.Super. 248, 367 A.2d 1106, 1109 (1976), the slip and fall plaintiff stated:

> I slipped and I fell, and it was something on the floor, whether—my trousers was wet in the back—but I don't know what I slipped on. There was paper and cups and stuff all over the floor, but I don't know what I slipped on.

The court rejected the contention that the plaintiff failed to identify the cause of her fall, stating: " 'It is not necessary . . . that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability.' " *Id.*, 367 A.2d at 1111.

The evidence concerning the cause of Janet's fall is more probative than in *Rogers* or *Burke*. Janet clearly indicates, through her deposition testimony and affidavit, that the ice caused her to fall. This evidence constitutes " 'sufficient facts for the jury to say reasonably that the preponderance favors liability.' " *McMillan*, 367 A.2d at 1111.[3]

## C.

▪ In arguing that Janet assumed the risk of her accident, Brookdale concentrates on Janet's following deposition testimony:

Q. Now, when you returned to the condominium at 4:30, you saw additional snow dust on the ground, but you were aware that underneath the snow, there was ice and snow that you previously observed at 11:30?

A. It felt that way, yes.

\* \* \* \* \* \*

Q. As you were leaving your condominium and heading to the area where your vehicle was parked, am I correct in understanding that even though there had been an additional fine snowfalling, you were still cognizant of the fact that underneath the snow was a slippery condition of ice and snow from previous days?

A. Yes, because that had existed most of the week.

Q. And you, nonetheless, proceeded to go out to your vehicle; is that correct?

A. Yes. . . .

(Janet's Dep. at 52–53.)

In arguing that Janet assumed the risk, Brookdale primarily rests upon the Pennsylvania Supreme Court's decision in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). There, the slip and fall plaintiff knew that she parked her car next to an ice patch and also knew that other parking spots were free of ice. "She nevertheless proceeded across the ice, both when she emerged from her car and again on her return to the car." 503 Pa. at 186, 469 A.2d 120. The plaintiff fell upon returning to her car. The *Carrender* court stated: "[B]y voluntarily proceeding to encounter a known or obvious danger, the [Plaintiff] is deemed to have agreed to accept the risk and to undertake to look out for [herself]."

*Carrender* is factually quite distinct from this case. Although Janet Meddick testified that she knew that there was ice forming underneath the snow at places on the parking lot, she did not testify that she knew she was walking along a path on which ice had formed. Furthermore, the evidence does not disclose that Janet was posed with a choice of a potentially dangerous path on which to walk and one that appeared quite clear.

*Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993), the most recent word from the Pennsylvania Supreme Court regarding the assumption of the risk doctrine, limited the use of the doctrine to an examination by the trial court of whether, under the facts of record, "the defendant, as a matter of law, owed

---

**3.** Denial of Brookdale's summary judgment motion does not mean that the Meddicks have established, as a matter of law, that the ice caused Janet to fall. The question of what caused the fall remains a jury issue.

plaintiff no duty of care." 620 A.2d at 1113.[4] The trial court "may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Id.* If a duty did exist, the matter becomes a simple question of comparative negligence. *Howell* also held that the assumption of the risk analysis is a matter of law and is not "part of the case to be determined by the jury." *Id.* The trial court thus decides whether the factual proffer warrants elimination of the duty of care.

The factual proffer made here does not warrant elimination of Brookdale's duty of care. As noted above, the evidence discloses that although Janet may have realized that a risk was present from the existence of ice, she did not indicate that she knew she was walking on ice at the time of her fall. Nevertheless, Brookdale argues, in insisting that it owed Janet no duty of care with regards to the parking lot, that Janet should have called Brookdale to request that it clean a pathway for her to walk to her car. But, assuming for the sake of argument that Brookdale's position is an accurate legal posture, this was no real option to Janet because Brookdale would have no duty to respond to her request and clean the lot. Either Brookdale owed Janet a legal duty to clean the lot or not. Piercing through Brookdale's position, it is apparent that Brookdale wants the luxury of owing no duty of care to its guests to clean its parking lot of dangerous conditions, yet also wants the business benefit of responding, without obligation, to a patron's request for a safe lot. The law does not allow for such a position. Brookdale is not absolved of its duties of care every time a natural, or artificial, condition or intrusion introduces itself to its premises.

 Thus, it is for a jury to determine the extent to which Janet's negligence contributed to her fall, if any. Or, applying the Pennsylvania Supreme Court's analysis in *Howell*, it cannot be determined that Brookdale owed Janet no duty of care because reasonable minds could disagree that Janet deliberately and with the awareness of specific risks inherent in walking along the path she took to her car nonetheless undertook the steps that led to her fall. *Id.*[5]

In short, granting summary judgment to Brookdale at this juncture effectively would free Brookdale from expending energy to shovel or salt its parking lots or pathways whenever a snowfall occurs because, as its position would allow, the snowfall, and the dangerous conditions it announces, would always be noticeable to Brookdale's patrons. Consequently, Brookdale is not entitled to summary judgment.

---

**4.** *Howell* actually is the third of a trio of Pennsylvania Supreme Court decisions regarding assumption of the risk issued since 1981, with *Carrender* being the second. In *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 437 A.2d 1198 (1981), the first of the three decisions, a majority of the court failed by one vote to abolish the doctrine.

**5.** Brookdale attacks the fact that no majority opinion on the assumption of risk came out of *Howell.* (Dkt. Entry # 17 at 5.) Brookdale cites

lower Pennsylvania court decisions for the proposition that "nonmajority decisions of the [Pennsylvania] Supreme Court are not binding." (*Id.*) *But see Hardy v. Southland Corp.,* 435 Pa.Super. 237, 645 A.2d 839, 842 (1994) (applying *Howell* as current state of Pennsylvania law regarding assumption of risk doctrine). Whether such decisions are "binding" is a different question, of course, than whether they fail to express the current state of Pennsylvania's law.