Valerio v. Keystone Turf Club Inc.

*I. Michael Luber,* for plaintiffs.
*Andrew Kramer,* for defendant.

ACKERMAN, *J.,* March 17, 1999—After a jury trial, a verdict was entered in favor of the defendant and against the plaintiffs.

The jury found that the defendant was not negligent on the basis of the evidence in this case.

Plaintiffs filed a motion for post-trial relief in the nature of a motion for new trial. After argument and hearing, this court denied plaintiffs' motion for post-trial relief and entered judgment upon the jury verdict in favor of the defendant and against the plaintiffs. Plaintiffs filed the instant appeal.

Plaintiffs contend that this court erred in the following respects:

(1) This court failed to charge the jury in accordance with Restatement (Second) of Torts §344.

(2) This court erred in accepting Dr. Frankel's expert opinion which lacked sufficient scientific foundation.

(3) This court erred in sustaining defense counsel's objection to plaintiffs' expert's reliance on learned treatises during plaintiffs' case in chief and rebuttal.

(4) This court erred in charging the jury as to contributory negligence.

(5) This court erred in denying plaintiffs' counsel the right to closing argument on rebuttal.

## I. *This Court Properly Refused To Charge As to Section 344 of Restatement*

Section 344 provides as follows:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability

to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment "f" to section 344 which addresses the issue of foreseeability serves to limit the landowner's liability as follows:

"(f) *Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. *If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time,* he *may* be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." (emphasis added)

This suit involved an incident at the Upper Darby Turf Club while the plaintiff, Anne Valerio, was exiting that club. Plaintiff contended that her fall was as the

result of a betting ticket left on one of the steps, improper lighting and the construction of the steps in question.

This court charged the jury as to the appropriate standard and responsibilities owed by a possessor of land to a business invitee. (Section 343 of Restatement.) The court explained that a possessor of land is required to use reasonable care in the maintenance and use of the property. The court's charge reviewed that the reasonable care required of a landowner depends on and must be in keeping with the use the possessor expects to make of the property. The possessor of land has certain responsibilities and they include using reasonable care and maintenance, inspecting the premises to discover dangerous conditions and to use care not to injure a business visitor by negligent activity. The court also explained to the jury the notice requirement and the relevance of an open and obvious condition. See N.T. 9/24/98, pp. 150-55 (jury instructions).

Plaintiffs cite several cases in contending that this court erred in failing to charge as to section 344.

In the case of *McMillan v. Mountain Laurel Racing Inc.*, 240 Pa. Super. 248, 367 A.2d 1106 (1976), the plaintiff had been at the racetrack in question for about two and a half hours along with about 1,000 other patrons. The floor in the room in question became increasingly littered as the races progressed. The plaintiff as she returned to her table after placing a wager fell and the plaintiff alleged that she had been caused to fall by liquid, cups, papers or tickets on the floor. The *McMillan* case went to trial and the trial judge entered a nonsuit at the close of the plaintiff's evidence on liability. The plaintiff then filed post-trial motions stating

that the nonsuit was inappropriate and that the jury should have potentially been charged on a number of Restatement (Second) of Torts sections, including section 341a entitled activities dangerous to invitees; section 343 entitled dangerous conditions known to or discoverable by possessor; and section 344 entitled business premises open to public: acts of third persons or animals. The Superior Court's conclusion was simply that, based on the various Restatement (Second) of Torts sections cited, that the jury should have been given the opportunity to consider the issue of negligence. *McMillan, supra* at 259, 367 A.2d at 1111. The Superior Court in *McMillan* did not hold that the trial court was required to instruct the jury using all of the Restatement (Second) of Torts sections cited by the plaintiffs in their post-trial motions but did hold that sufficient facts had been raised for the issue of negligence to have been decided by the fact-finder. *McMillan, supra* at 259, 367 A.2d at 1111.

In addition, the *McMillan* case involved a "place or character" of business where the very operation of the business catered to significant numbers of patrons *inside* of the premises. That factual difference alone was reason not to charge on section 344 in the instant case.

Similarly, the plaintiffs relied upon the case of *Moran v. Valley Forge Drive-in Theater Inc.*, 431 Pa. 432, 434, 246 A.2d 875, 877 (1968) in which the plaintiff and his family purchased tickets to a movie theater. Upon entering the theater, the plaintiff went to the restroom where six or eight teenagers were acting in a boisterous manner and a lighted firecracker was thrown into the restroom, causing the plaintiff to lose his hearing

and suffer a loud ringing in his ear. The *Moran* court held that section 344 of the Restatement (Second) of Torts was applicable in a situation where a jury question has been established that the defendants had notice either actual or constructive of prior acts committed by third persons within their premises which might cause injuries to other patrons. *Moran, supra* at 436, 246 A.2d at 878-79. The court stated that it is necessary under the Restatement (Second) of Torts §344 that reasonable measures be taken to control the conduct of third persons or to give adequate warning to enable patrons to avoid possible harm. It then becomes a question of fact for the jury as to whether or not the theater fulfilled its responsibility under the law. In the *Moran* case, the jury questions were whether adequate measures were taken to control the intentional conduct of third persons and as to whether the theater was justified in the failing to give sufficient warning which might have enabled patrons to avoid danger. *Moran, supra* at 437, 246 A.2d at 879.

Again, the *Moran* case involved a drive-in theater where the "place or character" of the business intrinsically involved negligent or criminal conduct *inside* of the premises which necessarily becomes part of the defendant's *past experience*. Thus, the *Moran* case is factually distinguishable from the case at bar where the plaintiffs' evidence at best established that an occasional betting ticket had been thrown on the *outside* steps by a patron.

The case of *Murphy v. Penn Fruit Company,* 274 Pa. Super. 427, 418 A.2d 480 (1980), involved a case where the defendant had prior notice of a variety of crimes having occurred within the store and behind

the parking lot. Accordingly, the character of this business was such that section 344 was appropriately charged where plaintiff was injured as the result of a stabbing incident which occurred on the parking lot. In the instant case, nothing within the premises of the Turf Club, either intrinsic to that business or within the past experience of that business, justifies a charge pursuant to section 344.

The plaintiffs cite the case of *Miller v. Peter J. Schmitt & Co. Inc.*, 405 Pa. Super. 502, 592 A.2d 1324 (1991). The *Miller* case involved a slip and fall in front of an ice machine *inside* of the premises of the defendant on "surface wetness." The Superior Court held that section 344 controlled the issue before the court on a motion for judgment n.o.v. But it was comment "c" which was involved in the *Miller* case and which is not involved in our case.

Comment "c" reads as follows:

"(c) *Independent contractors and concessionaires.* The rule stated applies to the acts of independent contractors and concessionaires who are employed or permitted to carry on activities upon the land. *The possessor is required to exercise reasonable care, for the protection of the public who enter, to supervise the activities of the contractor or concessionaire, including* the original installation of his appliances and their operation, and *his methods.*" (emphasis in original)

The instant case does not involve the acts of independent contractors and concessionaires *for whom the defendant should* be *responsible* under section 344.

Accordingly, this court properly refused to charge on section 344.

## II. *This Court Properly Accepted the Defendant's Expert, Dr. Victor R. Frankel's, Opinion on Causation*

The trial testimony of Dr. Victor R. Frankel was taken by videotape deposition on September 14, 1998. A true and correct copy of Dr. Frankel's videotape testimony was marked as exhibit D-51. Dr. Frankel was asked, based on the history that he took, his review of medical records and his physical examination of the plaintiff, whether he was able to form an opinion as to a reasonable degree of medical certainty as to the cause of the plaintiff's tibia and fibula fractures. The doctor stated it was his opinion that Anne Valerio sustained a pathologic fracture. Dr. Frankel described a pathologic fracture as a fracture that occurs in weakened and abnormal bone by an activity of normal daily living which produces a fracture that would otherwise not occur in a normal bone. The plaintiffs did not raise any objection to Dr. Frankel giving this opinion at the time of the videotape deposition. See N.T., exhibit D-51, p. 61. The plaintiffs then cross-examined Dr. Frankel as to his conclusions. Dr. Frankel on redirect was asked about his testimony on cross-examination that the medical literature reveals that osteoporotic fractures occur more frequently in the hip and lower back. The doctor confirmed that an osteoporotic fracture can occur in a lower extremity but that it is seen on a more regular basis in the hip and low back because those bones are a spongy type bone which are weaker by nature and more vulnerable to osteoporosis. The extremity bones are more cortical and dense bone by nature and

take longer to weaken in an association with osteoporosis. See N.T., exhibit D-51, p. 106.

The plaintiffs argue in their post-trial motion that Dr. Frankel's opinion should not have been accepted by the court because his opinion was speculative and contrary to the accepted authoritative literature on pathologic fractures; therefore, not given to a reasonable degree of medical certainty. The plaintiffs go on to argue that an expert must state his opinion to a reasonable degree of medical certainty. However, in the case of *Neal by Neal v. Lu,* 365 Pa. Super. 464, 530 A.2d 103 (1987), the Superior Court has stated that a defendant is not under an obligation to prove that he or she is innocent of any alleged wrongdoing. Absent an affirmative defense or counterclaim, the defendant's case is nothing more than an attempt to rebut or discredit the plaintiff's case and, therefore, a defense expert can testify to an opinion to less than a reasonable degree of medical certainty. *Neal, supra* at 476, 530 A.2d at 109-110.

In the case at hand, the Valerios allege that the slip and fall accident was caused by either debris from the steps, poor lighting in the area and/or the construction of the steps. The defendant's presentation of evidence from Dr. Frankel was merely to rebut the plaintiffs' allegation and to discredit the plaintiffs' case by arguing that the plaintiff's fracture was a pathologic fracture caused by her severe and pre-existing osteoporosis. Due to the fact that plaintiffs' counsel failed to object to Dr. Frankel's opinion, when it was offered at the time of his deposition, as to the cause of the plaintiff's fracture in combination with the fact that pursuant to the *Neal* decision, a defense expert does not have to state an

opinion within a reasonable degree of medical certainty, this court properly accepted Dr. Frankel's opinion which was in fact offered to a reasonable degree of medical certainty.

### III. *The Trial Court Properly Sustained the Defendant's Objection to the Plaintiffs' Expert Rebuttal Witness's Attempt To Read Learned Treatises Into the Record*

The plaintiffs' rebuttal testimony was offered by Dr. Maureen Malloy, a board certified orthopedic surgeon, who testified that she completely disagreed with Dr. Frankel's opinion that the plaintiff suffered a pathologic fracture. Dr. Malloy testified that she reviewed the x-rays, the plaintiff's medical records and the surveillance video of the incident along with certain medical literature. The plaintiffs' expert was permitted to identify the medical literature that she relied upon in the preparation of her expert report. However, the plaintiffs' rebuttal witness was not permitted to read to the jury excerpts from the learned treatises. See N.T., 9/23/98, pp. 156-58.

The Pennsylvania Superior Court has specifically stated that it is well settled that an expert may be cross-examined on either the contents of a publication upon which he or she has relied in forming an opinion or any other publication which the expert acknowledges to be a standard work in the field. *Majdic v. Cincinnati Machine Company,* 370 Pa. Super. 611, 621, 537 A.2d 334, 339 (1988) (citing *Cummings v. Borough of Nazareth,* 430 Pa. 255, 242 A.2d 460 (1968); *Walheim v. Kirkpatrick,* 305 Pa. Super. 590, 451 A.2d 1033 (1982); *Brannan v. Lankenau Hospital,* 254 Pa. Super. 352, 385 A.2d 1376 (1978), *reversed on other grounds,*

490 Pa. 588, 417 A.2d 196 (1980)). In a situation where the literature is used for cross-examination purposes and is not admitted for the truth of the matter asserted but only used to challenge the credibility of the witness's opinion and the weight to be accorded thereto, the literature is admissible. *Majdic, supra* at 621, 385 A.2d at 339. Treatises which are offered to prove the truth of the matters contained therein are hearsay and are not to be admitted into evidence for consideration by the jury. *Majdic, supra* at 621, 385 A.2d at 339 (citing McCormick on Evidence §321 at 899 (3d ed. 1984)).

The plaintiff attempts to circumvent the rule cited in the *Majdic* decision by citing an exception to the hearsay rule which permits medical experts to express opinions which are based in part upon reports which are not in evidence but which are customarily relied upon by experts in the practice of a profession. *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971). The Superior Court has addresssed this exception to the hearsay rule on a number of occasions and, recently, has reviewed this area of the law in *Primavera v. Celotex Corporation,* 415 Pa. Super. 41, 608 A.2d 515 (1992). In the *Primavera* decision, the Superior Court stated that the underlying rationale for the hearsay exception is multifaceted and includes the fact that an expert's opinion is based on years of professional experience and schooling, the expert is assumed to be able to evaluate the trustworthiness of data upon which he or she relied, the expert regularly relies on and uses similar data in the practice of his or her profession, and it is the type of data that is used in making daily judgments and diagnosis by the particular expert. However, the *Primavera* decision went on to state that it was the

testifying expert's opinion which was being presented and which was subjected to scrutiny, cross-examination and credibility determinations. *Primavera, supra* at 51, 608 A.2d at 520.

In the case at hand, the learned treatises were not being offered to cross-examine Dr. Malloy, to challenge the credibility of her opinion or to assist the jury in determining the weight that the jury should give to that opinion but were being offered by the plaintiff for the truth of the matter asserted in the treatise and, thus, were outside the hearsay exception as it has been delineated by the *Celotex* decision and properly excluded.

## IV. *This Court Properly Charged the Jury on Contributory Negligence*

Plaintiffs properly did not, in their argument, pursue the contention that this court should not have charged the jury as to contributory negligence. That issue *was* clearly and properly for the jury in this case.

## V. *This Court Properly Limited the Time Counsel Had To Make Closing Arguments*

The final point raised by the plaintiffs in their post-trial motion is that the court's refusal to allow the plaintiffs any rebuttal argument was error and unfairly prejudiced the plaintiffs in the presentation of their case. On two separate occasions, the trial court explained to counsel that they would each have 40 minutes in which to make their closing arguments. The trial court specifically explained to plaintiffs' counsel that the 40 minutes was to cover both closing and any rebuttal which he wished to make. The plaintiff was also cautioned by the court in the midst of his closing argument that he was ap-

proaching his prescribed time allotment. Regardless of the court's admonition, plaintiffs' counsel used his entire 40 minutes allotted for the closing argument and failed to save any of the time for rebuttal. See N.T., 9/24/98, pp. 29-30, 43 and 68. At the conclusion of the plaintiffs' closing argument, the court stated there would be no time for rebuttal. Plaintiffs' counsel did not request any additional rime for rebuttal or take an exception to the court's ruling. See N.T., 9/24/98, pp. 77, 78 and 107.

Pursuant to Pa.R.C.P. 223(a)(3), the Pennsylvania Rules of Civil Procedure specifically state that the court may regulate the number and length of counsel's addresses to the jury or to the court. Furthermore, the Philadelphia Local Rule of Civil Procedure 223.1(b) states that the time to be occupied in examining a witness and addressing the jury is to be regulated by the trial judge.

Plaintiffs' counsel could have saved as much of his allotted time for rebuttal as he desired if he had simply stopped his closing argument short of the 40 minutes or even stopped when the judge warned him that his time was short when he was advised by the court that he had 10 minutes of argument remaining. However, plaintiffs' counsel voluntarily used all of his 40 minutes in his initial closing address to the jury. Furthermore, plaintiffs' counsel failed to, as is required by Pa.R.C.P. 227.1(b)(1), raise an objection on the record as the court's refusal to allow plaintiffs' counsel additional time to make his rebuttal argument. Therefore, this court properly refused to provide plaintiffs' counsel any time for rebuttal argument pursuant to Pa.R.C.P. 223(a)(3) and Phila.R.C.P. 223.1(b).

Accordingly, this court committed no error.