J-A21015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TATIANA OUDOLSKY AND PETER OUDOLSKY, W/H | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MOUNT AIRY CASINO #1, LLC AND MOUNT AIRY CASINO RESORT, L.P. | : | No. 3109 EDA 2023 |

Appeal from the Order Entered October 30, 2023
In the Court of Common Pleas of Monroe County Civil Division at No(s):
003804-CV-2022

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED OCTOBER 22, 2024**

## I.    Introduction

In this slip-and-fall case, Plaintiffs, Tatiana and Peter Oudolsky, appeal from the order granting summary judgment to Defendants, Mount Airy Casino #1, LLC and Mount Airy Casino Resort, L.P.  Because a jury might reasonably find that the negligent acts of the resort's employees created the slippery spot on which Mrs. Oudolsky fell, we partially reverse and remand for trial.

## II.    Factual and Procedural Background

On July 4, 2020, while COVID-19 raged, the Oudolskys stayed at the resort as invitees.  The resort had installed hand-sanitizer stations in various locations to counter the disease.  It hung one of its hand-sanitizer stations on the side of a slot machine, above a marble pathway through the casino floor. ***See*** Oudolskys' Reply to Motion For Summary Judgment at 4, Video-Surveillance Screenshot #1.  That dispenser drew at least three patrons, who

"would pour some sanitizing liquid onto their hands, and they would [rub] their hands with the liquid . . . ." Depo. of Tatiana Oudolsky at 18. Two resort patrons used the dispenser at 12:11 a.m.; another patron used it at 12:31 a.m. *See* Oudolskys' Reply to Motion For Summary Judgment at 5, Video-Surveillance Screenshots #3 & #4.

Ten minutes later, at 12:41 a.m., Mrs. Oudolsky walked on the marble floor in front of the dispenser. She "slipped on some liquid substance . . . ." Depo. of Tatiana Oudolsky at 23. Mrs. Oudolsky "believe[d] it was the sanitizing liquid," or "[m]aybe somebody spilled something else there." ***Id.*** at 25. She recalled that "it was a clear liquid, because [she] couldn't see it. It just kind of blended in with the floor. Or maybe it was almost clear. It was transparent." ***Id.***

Mrs. Oudolsky fell onto the marble floor and suffered an elbow injury.

The Oudolskys commenced this action against the resort. They alleged negligence based on premises liability and loss of consortium/society by Mr. Oudolsky. At the close of discovery, the resort moved for summary judgment, which the trial court granted.

In the trial court's view, (1) Mrs. Oudolsky's deposition did not establish that the resort created the dangerous condition, and (2) the Oudolskys offered no evidence regarding "how long the liquid came to be on the floor, how long it had been there, or when it was last cleaned." Trial Court Opinion, 10/30/23, at 7. The trial court also relied upon the absence of an expert report explaining

"what the liquid was, where it came from or how it got on the floor, or that defective equipment was involved." **Id.** This timely appeal followed.

### III. Analysis

The Oudolskys raise four appellate issues:

1. Whether the trial court [erred] by granting . . . summary judgment where evidence was presented that [the resort] created the dangerous condition of installing a hand-sanitizing station immediately adjacent to a marble walkway utilized by [Mrs.] Oudolsky?

2. Whether the trial court [erred] by granting . . . summary judgment where evidence was presented that [Mrs.] Oudolsky, testified that she believed she slipped on sanitizing liquid next to the hand sanitizing station and that she felt sanitizing liquid with her hand after her fall?

3. Whether the trial court [erred] by granting . . . summary judgment where evidence was presented by surveillance video still shots that . . . the [resort] failed to inspect, maintain, and/or clean the subject area where [Mrs.] Oudolsky, fell for over one hour before her fall?

4. Whether the trial court [erred] by granting . . . summary judgment where evidence was presented during oral argument that a maintenance employee of [the resort] walked by the precise area where [Mrs.] Oudolsky, slipped/fell approximately one minute before she slipped/fell but failed to clean up the sanitizing liquid situated on the marble walkway?

Oudolskys' Amended Brief at 4-5. We address issues one and two together, followed by issues three and four.

*A.  Resort Created Dangerous Condition & Source of the Liquid*

For their first two issues, the Oudolskys contend the trial court erred by granting summary judgment, because the resort negligently caused the wet

spot to form on the marble floor. They believe that, by installing the hand-sanitizer station above a marble floor, the resort created the dangerous condition. They also argue that Mrs. Oudolsky sufficiently identified the source of the liquid to create a question of fact for the jury.

Relying on **Schwartz v. Warwick-Philadelphia Corp.**, 226 A.2d 484, 484 (Pa. 1967), the Oudolskys state a "party need not identify concretely when the cause of the dangerous or hazardous condition was created." Oudolsky's Amended Brief at 25. They assert "constructive notice need not be proved" in this case, because the resort negligently installed the hand-sanitizer station above a marble floor. **Id.** at 30 (quoting **Schwartz** at 487).

The resort agrees with the Oudolskys that, under Pennsylvania law and § 343 of THE RESTATEMENT (SECOND) OF TORTS (1965), if a "business owner created the harmful condition, he is deemed to have actual or constructive notice" of it. Resort's Brief at 20-21 (quoting **Marshall v. Brown's IA, LLC**, 213 A.3d 263 (Pa. Super. 2019)) (some punctuation omitted). However, the resort then essentially ignores this portion of the law in its argument and the Oudolskys' claim that installing a liquid dispenser above a marble floor was foreseeably dangerous. Instead, the resort focuses upon Mrs. Oudolsky's inability to identify with complete certainty the liquid that caused her to slip and fall. **See id.** at 21-28. The resort contends a jury would be forced to speculate that she slipped on liquid from the hand-sanitizer dispenser. We disagree.

Whether a party is entitled to summary judgment presents a pure question of law. Thus, our standard of review is *de novo*. *See*, *e.g.*, *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). We view all facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *See Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007).

Summary judgment is only appropriate "where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010). If a non-moving party fails to produce sufficient evidence on an issue essential to the claim and on which the non-moving party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *See Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 563 (Pa. Super. 2014). "A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in [her] favor." *Id.* at 568.

In order to establish a *prima facie* case for negligence, a plaintiff must prove four elements: a duty of care imposed by law, breach of the duty of care, a causal link between the defendant's breach and the plaintiff's injuries, and actual harm. *See*, *e.g.*, *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. 1993). At issue here is whether the Oudolskys, as the resort's invitees, offered sufficient evidence to give rise to a duty by the resort to clean

the wet spot on the marble floor or otherwise warn or protect Mrs. Oudolsky from impending harm.

The Supreme Court of Pennsylvania has held that Section 343 of THE RESTATEMENT (SECOND) OF TORTS accurately reflects the common law of this Commonwealth on the liability of possessors of land. **See McKenzie v. Cost Bros.**, 409 A.2d 362, 365 (Pa. 1979). According to that section:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

THE RESTATEMENT (SECOND) OF TORTS § 343 (1965).

To succeed on a claim based on Section 343, an invitee must produce "evidence which tends to prove that the possessor deviated in some particular from his duty of reasonable care under the existing circumstances." **Moultrey v. Great A & P Tea Co.**, 422 A.2d 593, 596 (Pa. Super. 1980). This requires proof "either that the [possessor] knew, or in the exercise of reasonable care ought to have known, of the existence of the harm-causing condition." **Id.** The invitee may show a possessor had knowledge of a dangerous condition in one of three ways.

First, the invitee may offer proof that the "condition is traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his authority) . . . ." *Id.* In that scenario, the invitee "need not prove any notice in order to hold the possessor accountable for the resulting harm." *Id.*

Second, if "the condition is one which the [possessor] knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it." *Id.*

Third, when the possessor did not create the condition and the condition does not reoccur regularly on the property, the law allows the invitee to prove actual or constructive notice by the possessor. This theory requires the invitee to offer "other evidence which tends to prove that the [possessor] had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the [possessor] should have known of it." *Id.* Under this third theory of liablity, the invitee must produce "evidence that the harmful condition existed for such a period of time that the [possessor] should have known of its existence, and should have taken steps to remedy it." *Id.* at 597.

In their Complaint, the Oudolskys alleged multiple theories of possessor liablity. As the trial court recognized, in paragraph 31 of the Complaint, they asserted "the dangerous and/or defective condition . . . 'existed for such a time so as to allow [the resort] ample time to remedy the dangerous

condition.'" Trial Court Opinion, 10/30/32, at 4 (quoting Complaint at 6, ¶ 31) (emphasis removed). As such, they relied on the actual-or-constructive-notice theory of liablity. However, the Oudolskys also alleged that the "wet condition that caused [Mrs. Oudolsky] to fall was created and/or facilitated by the unreasonable actions" of the resort. Complaint at 5, ¶ 22. Thus, the Oudolskys brought their causes of action under the possessor-created-danger theory of liablity, as well.

Rather than fully considering that possessor-created-danger theory, the trial court only stated, "Mrs. Oudolsky's testimony is not sufficient to establish that [the resort] created the hazardous condition . . . ." Trial Court Opinion, 10/30/23, at 6. While that may be true, the Oudolskys submitted physical evidence to the trial court in support of their possessor-created-danger theory of liability. Specifically, they offered screenshots from the resort's surveillance video to establish a timeline of three patrons using the hand-sanitizer station in the 30 minutes prior to Mrs. Oudolskys' fall.

In those screenshots, one patron used the hand-sanitizer station a mere ten minutes prior to the fall. By ignoring that evidence when considering whether the resort created the hazardous condition, the trial court erroneously limited its scope of review to Mrs. Oudolsky's deposition. It thereby failed to draw all reasonable inferences that jurors might make from the totality of the record. As we explain, that omission was critical.

Mrs. Oudolsky slipped on liquid, which had spilled onto the marble floor, directly in front of a hand-sanitizer station, within ten minutes of someone

using the dispenser. **See** Oudolskys' Reply to Motion For Summary Judgment at 4, Video-Surveillance Screenshot #1 & #2. We have long held that "circumstantial evidence may be adequate to prove a plaintiff's case. It is not necessary that every fact or circumstance be established unerringly." **Deaver v. Miller**, 393 A.2d 1209, 1211 (Pa. Super. 1978) (*en banc*). The close proximity of the dispenser to the spot where Mrs. Oudolsky slipped on the liquid is sufficient circumstantial evidence as to the source of the liquid.

Although Mrs. Oudolsky did not know "what exactly" the liquid was, she "believe[d] it was the sanitizing liquid." Depo. of Tatiana Oudolsky at 25. Her belief was a reasonable deduction, given that she fell indoors, near the hand-sanitizer station. While she admits that her belief does not eliminate the possibility that someone spilled something else in front of the hand-sanitizer station, nothing of record reflects that anything else spilled there. And her uncertainty goes to Mrs. Oudolsky's credibility and the weight that the jury may attribute to her testimony, not the legal sufficiency of her testimony to establish a *prima facie* case. The Supreme Court has "many times said that, when the establishment of a question of fact depends upon oral testimony, the credibility of the witness or witnesses is for the jury alone, and it is their exclusive province to determine whether from such testimony the fact in dispute has been established." **Second Nat. Bank of Pittsburg v. Hoffman**, 78 A. 1002, 1003 (Pa. 1911).

Thus, we must credit her reasonable belief that the liquid she fell upon was the liquid from the hand-sanitizer station, for purposes of this appeal,

because we must accept the facts as true that are most favorable to the Oudolskys, as the non-moving party. Furthermore, viewing the screenshots of the three patrons using the hand-sanitizer station prior to Mrs. Oudolsky's fall in the light most favorable to the Oudolskys, there is physical evidence of record establishing that the wet spot on which she slipped was, in fact, hand-sanitizer liquid.

In the absence of evidence pointing to another source, it would be eminently reasonable for jurors to infer, based on their own life experience and understanding of how hand-sanitizer dispensers work, that the source of the liquid was the hand-sanitizer station. They can reach such a conclusion based on basic laws of physics – *i.e.*, that (1) matter is neither created nor destroyed and (2) gravity pulls liquids down. In other words, the liquid did not magically apparate itself onto the marble floor, nor did it precipitate there from the heavens. ***See Bywater v. Conemaugh Memorial Med. Ctr.***, 1072 WDA 2023, 2024 WL 3649088 (Pa. Super. 2024) (non-precedential) (holding summary judgment was properly granted to possessor of land, due to lack of proof of actual or constructive notice, where the allegedly dangerous condition was an icy patch in parking lot, *i.e.*, an act of God).

Unlike in ***Bywater***, the liquid which caused Mrs. Oudolsky to slip came from a source located inside the resort, above the marble floor. The only source in this record fitting that description is the hand-sanitizer station. Hence, based on the evidence that the Oudolskys produced in response to the motion for summary judgment, the liquid was likely hand-sanitizer.

Furthermore, the parties agree the resort installed the hand-sanitizer station above the marble floor. To say that a slipping hazard was reasonably foreseeable to the resort employees when they chose to install the hand-sanitizer station above a marble floor is an understatement. As Justice Musmanno said, "In this setting, it was inevitable that something untoward would happen, and it did." *Schwartz*, 226 A.2d at 485. If the jury finds the resort employees' decision to install the hand-sanitizer dispenser above the marble floor was negligent, then "their acts, under the principle of *respondeat superior*, were the acts of the employer." *Id.* at 487. Hence, if the jury makes such a finding, the resort created the dangerous condition.

In a case similar to the facts of record, a woman was a business invitee of a department store, when she "tripped on a tied string or tape like those that bound the towels, sheets, etc." and fell. *Clark v. Glosser Bros. Dep't Stores*, 39 A.2d 733, 734 (Pa. Super. 1944) (*en banc*). The jury returned a verdict in favor of the woman. The store moved for judgment notwithstanding the verdict, and the trial court denied relief. On appeal, this Court affirmed the judgment, because there was evidence the store's employees negligently created the dangerous condition.

The store argued "that there was no proof of constructive notice of the alleged dangerous condition of the floor." *Id.* We deemed such evidence "unnecessary." *Id.* "Plaintiff's proof, which must be accepted on this appeal, shows that the injuries sustained by her were due to the direct negligence of the defendant's employes in throwing the tapes in the aisles *or not taking*

***reasonable precaution to prevent their falling to the floor***, so that the question of constructive notice was not of vital importance." ***Id.*** (emphasis added). By placing the packaging tape in the public section of the store, its employees created the risk of injury to invitees, giving rise to a corresponding duty to eliminate that risk.

Here, the resort's employees installed the hand-sanitizing station over a marble floor, in the public section of the casino. Therefore, the resort's employees created the risk of injuries to its invitees, regardless of whether other patrons dripped the liquid from their hands onto the floor or the liquid leaked directly from the dispenser. Either alternative is an equally foreseeable outcome when someone hangs a hand-sanitizer dispenser, intended for public use, over a marble floor. As such, the absence of proof from the Oudolskys regarding how the liquid got from the dispenser to the floor is no impediment to their recovery. This arises from the fact that an invitee "entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors." THE RESTATEMENT OF TORTS (SECOND) § 343, ***supra***, Comment (e).

The resort took no precaution to prevent the liquid hand-sanitizer that it placed in the casino from falling onto the marble floor. The indisputable video evidence, as reflected in the Oudolskys' screenshots, shows that the resort installed no tray to catch drips from the dispenser or from the hands of people using the liquid. It placed no high-friction mat or rug over the marble

floor to absorb the liquid once it fell. The resort deployed no "Caution: Wet Floor" marker near the hand-sanitizer station. Thus, a reasonable jury might find that installing the hand-sanitizer station above that marble floor, without added precautions, was negligence by the resort's employees.

If the jury makes such a finding, the "employees had actual notice of their own alleged negligent acts, which were within the apparent scope of their authority and in the furtherance of the [resort's] business." **Clark**, 39 A.2d at 734. The resort, in turn, would be "chargeable with their dereliction" under the doctrine of *respondeat superior*. **Id.**; **see also Schwartz**, **supra**.

Lastly, we recognize that the resort placed hand-sanitizer stations on its property to protect employees and patrons from COVID-19, a disease which could undoubtedly do greater harm than merely falling onto the floor. While we commend the resort for its efforts, no law relieves it from the duty to maintain a safe environment based on good intentions. The Oudolskys made a *prima facie* case that, in trying to counter the disease, the resort negligently created another, foreseeable hazard for which it is liable, *i.e.*, a slippery surface on its casino floor. Under the tort law of this Commonwealth, the resort had an obligation to protect its patrons from any dangerous conditions that it created on its property, including those that it created in its attempt to counter the COVID-19 virus.

Accordingly, the trial court erred by granting summary judgment to the resort based on the Oudolskys' theory that it created the dangerous condition. The Oudolskys' first and second appellate issues are meritorious.

- 13 -

## B.    Resort Did Not Clean/Inspect Floor

For their final two issues, the Oudolskys ask whether they presented evidence "by surveillance video still shots that . . . the [resort] failed to inspect, maintain, and/or clean the subject area where [Mrs.] Oudolsky, fell for over one hour before her fall," and whether "evidence was presented during oral argument that a maintenance employee of [the resort] walked by the precise area where [Mrs.] Oudolsky, slipped/fell approximately one minute before she slipped/fell but failed to clean up the sanitizing liquid . . . ?" Oudolskys' Amended Brief at 5.  These issues, as the Oudolskys framed them in both their 1925(b) statement[1] and at the outset of their brief, inquire into the sufficiency of their evidence of the breach of the resort's duty to keep the area clean, not their evidence of actual or constructive notice to the resort that the area needed to be cleaned.

However, in their argument section of their brief, the Oudolskys then rephrase third and fourth issues to ones concerning the questions of actual or constructive notice to the resort, under their alternate theory of possessor liability.  The third argument in their brief is entitled, "C.  Reversible Error Was Committed When the Trial Court Opined That [the Oudolskys] Did Not Submit Proof as to How Long the Liquid Was Present on the Floor."  *Id.* at 32.  Their fourth argument is entitled, "D.  Reversible Error Was Committed When the Trial Court Opined That [the Oudolskys] Could Not Overcome Summary

_____

[1] *See* Pa.R.A.P. 1925(b).

Judgment, Because an Expert Report Was Required to Determine the Source of the Liquid Substance Which Caused Mrs. Oudolsky to Fall." *Id.* at 34. Additionally, the Oudolskys cite no law to support either of those arguments. *See id.* at 32-35. As such, we must determine whether the Oudolskys have waived these issues.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *In re Estate of Anderson*, 317 A.3d 997, 1003 (Pa. Super. 2024). "Any issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).

Similarly, appellants must list the issues from their 1925(b) statement at the front of the brief in the statement of questions involved. "The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail . . . No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

In addition, "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). As a result of these Rules, the issues in an appellant's 1925(b) statement, statement of questions involved, and headings in the argument section of their brief should be the same.

In their argument, the Oudolskys strayed from the issues raised in their 1925(b) statement and statement of questions involved. Whether they submitted sufficient proof to establish actual or constructive notice by the resort and whether the trial court erred by stating that "No expert reports were offered to explain what the liquid was, where it came from or how it got on the floor, or that defective equipment was involved," are not listed in the outset of the Oudolskys brief or fairly suggestable thereby. Nor do they appear in the Oudolskys' 1925(b) statement.

Additionally, even if they had, the Oudolskys included no citations to authority in either argument, in direct contradiction to Pa.R.A.P. 2119(a). As such, the arguments are underdeveloped. "When an appellant's argument is underdeveloped, we may not supply it with a better one." *Commonwealth v. Deible*, 300 A.3d 1025, 1035 (Pa. Super. 2023). "[M]ere issue spotting without sufficient analysis or legal support precludes appellate review." *Id.*

Based on the Oudolskys' violations of the Rules of Appellate Procedure for their third and fourth issues, we dismiss both issues as waived.

## IV. Conclusion

In sum, the Oudolskys presented evidence from which a jury may reasonably conclude that the resort created the dangerous condition on its property by hanging a hand-sanitizer dispenser over a marble floor, without taking any precautions to prevent the floor from becoming slippery or providing a sufficient warning to its invitees. Thus, the Oudolskys sufficiently supported their allegation that the "wet condition that caused [Mrs. Oudolsky]

to fall was created and/or facilitated by the unreasonable actions" of the resort. Complaint at 5, ¶ 22. They have the right to a trial by jury on that allegation, alone. We affirm the grant of summary judgment to the resort on all other theories of premise liablity.

Order partially affirmed and partially reversed. Case remanded for trial.

Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/22/2024